IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GREE, INC., §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>SUPERCELL OY, §<br>§<br>*Defendant*. § | Case No. 2:19-cv-00070-JRG-RSP<br>Case No. 2:19-cv-00071-JRG-RSP |

## MEMORANDUM ORDER

Before the Court are motions in both cases entitled Motion to Exclude Portions of Expert Testimony Pursuant to Daubert ("Motions"), filed by Plaintiff GREE, Inc. **Dkt. No. 227** in Case No. 2:19-cv-00070-JRG-RSP ("the -70 case") and **Dkt. No. 198** in Case No. 2:19-cv-00071-JRG-RSP ("the -71 case"). After consideration, the Court **DENIES** both Motions.

### I. BACKGROUND

Plaintiff GREE, Inc. ("GREE") filed these actions against Defendant Supercell Oy ("Supercell"), alleging infringement of U.S. Patent Nos. 9,604,137, 9,774,655, 9,795,873, and 9,956,481 in the -70 case and U.S. Patent No. 9,597,594 in the -71 case.[1]

GREE hired Dr. Becker as an expert on damages. He concluded that in a hypothetical negotiation, the parties would agree to a running royalty based on a percentage of Supercell's revenues. In rebuttal, Supercell hired its own expert on damages, Mr. Bakewell. He opined that the parties would instead have agreed to a lump sum royalty payment in a hypothetical negotiation. Dkt. No. 240-2 at ¶ 121. Mr. Bakewell relied on license agreements produced by GREE and

---

[1] Unless indicated otherwise, all citations are to the -70 case. However, they apply equally to the corresponding filings or orders entered in the -71 case.

Supercell in discovery for his opinion on the form of the royalty payment. GREE's Motions take issue with some of the license agreements:

- three patent license agreements between Supercell and Thompson Licensing, in which Supercell licensed MP3 audio coding technology from Thompson for use in the accused games, *id*. at ¶ 117;

- one patent cross-license agreement between Google LLC and Supercell's parent company, Oriental Power Holdings Limited, *id*. at Ex. 2.0; and

- one patent cross-license and associated addenda to a license between GREE and Sega Holdings Co., Ltd., *id*. at Ex. 2.1 [2] (collectively, the "Licenses").

Specifically, GREE argues that Mr. Bakewell's reliance on these licenses to determine the form of reasonable royalty is improper since Supercell did not produce any evidence of the technological or economic comparability of the licenses.

## II. LEGAL STANDARD

### a. Expert Witnesses

A qualified expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. FED. R. EVID. 702.

"[T]he Rules of Evidence—especially Rule 702" require that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). However, "[t]he inquiry

---

[2] The Motions are not directed at the 2019 GREE-Supercell Agreement. Dkt. No. 271 at 2 n.1; *see also id*. at ¶ 114.

envisioned by Rule 702 is . . . a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'").

While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct . . . ." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### III. ANALYSIS

GREE seeks to exclude all opinions and testimony offered by Mr. Bakewell relating to the Licenses because it contends that all five are neither technically nor economically comparable and therefore cannot be relied upon for any purpose. GREE first explains that "[t]he second *Georgia-Pacific* factor is '[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (quoting *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). GREE argues that the Federal Circuit has "made clear that 'use of past patent licenses' under this factor 'must account for differences in the technologies and economic circumstances of the contracting parties.'" Dkt. No. 227 at 2 (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)) (citing *Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319–

20 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870–73 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)).

GREE argues that its technical expert, Dr. Akl, concluded that the Licenses are not technically comparable. Yet, GREE contends that Mr. Bakewell's report does not contain any analysis or citation rebutting Dr. Akl's conclusion or establishing the comparability of the Licenses.[3] Nonetheless, despite his apparent failure to show comparability, GREE contends that Mr. Bakewell relied on the Licenses to determine that a reasonable royalty would take the form of a lump sum. GREE argues that under this Court's precedent, Mr. Bakewell is prohibited from using these licenses for any purpose without a showing of comparability. *Id.* at 4 (citing *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017)). It further argues that non-comparable licenses cannot be used even for the limited purpose of establishing a party's alleged preference for a lump sum agreement, citing two out-of-district cases allegedly holding as such. *Id.* at 5 (citing *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-cv-512, 2012 WL 12068846, at *2 (E.D. Va. Oct. 12, 2012); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013)).

Supercell responds that it agrees that in order to rely upon a prior license as the basis for determining the royalty *amount*, the proponent must first establish comparability. Dkt. No. 240 at 3 (citing *Lucent*, 580 F.3d at 1325). It argues, however, that Mr. Bakewell only uses the Licenses to establish the royalty *form*, a permissible use even without a showing of comparability. Supercell contends that this is the majority view in this District as well as others from around the country. *Id.* at 3–4 (citing *Smartflash LLC v. Apple, Inc.*, No. 6:13-cv-447-JRG-KNM, 2014 WL 7336213, at *3 (E.D. Tex. Dec. 23, 2014); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014

---

[3] GREE argues that Mr. Bakewell analyzed the SEGA License and found it was not comparable since he stated the license is "not informative of a reasonable royalty in this case." *Id.* at 3 (citing Dkt. No. 227-2 at ¶ 113).

WL 794328, at *11 (N.D. Cal. Feb. 25, 2014); *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-CV-01735-H-RBB, 2016 WL 7644790, at *5 (S.D. Cal. Sept. 14, 2016)). To further its point, Supercell represents that "[c]onsistent with his report, Mr. Bakewell will not discuss the amount of these licenses." *Id*. at 5.

Supercell also distinguishes the cases cited by GREE. First, it argues that nearly all of the cited authority relates to the importance of comparability when an expert uses a license to opine on the *amount* of the reasonable royalty as opposed to the *form* of a reasonable royalty. According to Supercell, this distinction would eliminate the applicability of all the cited Federal Circuit cases as well the *Biscotti* case from this District and the *TV Interactive* case from the Northern District of California. Furthermore, it argues that in *Odyssey Wireless*, the court explicitly found:

> [Plaintiff's] reliance on *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) is unpersuasive. In that case, the expert attempted to rely on the licenses at issue to establish a reasonable royalty rate, not merely the form of payment. *See id*. at 1015-16.

2016 WL 7644790, at *5 n.6 (denying motion to exclude). Finally, it attempts to distinguish *I/P Engine* as a single case, which contradicts this Court's precedent as well as the clear precedent of other courts holding that such evidence is admissible.

As an initial matter, Supercell is correct in its assertion that the cited Federal Circuit cases all deal with the amount, as opposed to the form, of a reasonable royalty—a distinction which limits their applicability here. *Biscotti* falls into the same category, hindering its usefulness. Thus, *Smartflash* appears to be the most applicable case from this District as Judge Mitchell found that:

> Defendants take issue with Mr. Mills's use of the Licensing Executive Survey, asserting the licenses surveyed do not sufficiently compare to the hypothetically negotiated license. *Id*. at 13 (citing *LaserDynamics*, 694 F.3d at 80) . . . Smartflash contends that Mr. Mills only considered the survey in relation to the form of the royalty (a lump sum versus a royalty rate) . . . [In sum,] Mr. Mills's use of the Licensing Executive Society Survey when discussing the form of the royalty is . . . an issue of evidentiary weight.

*Smartflash*, 2014 WL 7336213, at *3.

Therefore, *Smartflash* stands for Supercell's proposition that an expert does not need to first establish comparability of prior licenses in order to rely on them to determine the form a reasonably royalty would take in a hypothetical negotiation. Courts in other jurisdictions have reached the same result. For instance, Judge Huff in the Southern District of California held:

> Apple's reliance on these licenses to support its contention that it would receive a lump-sum payment is permissible. The licenses are comparable for that specific purpose. Any challenge Odyssey may have to Apple's use of these licenses to establish entitlement to a lump-sum payment goes to the weight, not the admissibility of Dr. Lynde's testimony. *See Ericsson*, 773 F.3d at 1227. Accordingly, the Court denies Odyssey's motion to exclude the expert report and testimony of Dr. Lynde without prejudice to a contemporaneous objection at trial.

*Odyssey Wireless*, 2016 WL 7644790, at *5. Similarly, Judge Koh of the Northern District of California held:

> As to the form of the reasonable royalty (lump-sum versus running royalty), Dr. Chevalier may continue to rely on her overall review of the license agreements in the record. Apple has not shown that Dr. Chevalier's choice of a lump-sum form based on [redacted] is improper or otherwise unfairly prejudicial.

*Apple*, 2014 WL 794328, at *11 (redaction in original).

Furthermore, even *I/P Engine*, the case cited by GREE, does not appear to conflict with today's conclusion. In that case, the court explained that it "believes that the introduction of these agreements, even if for the purpose of showing Google's preferred form of royalty, is likely to confuse the jury and allow them to give impermissible weight to the amounts of the lump sum payments associated with those agreements." *I/P Engine*, 2012 WL 12068846, at *2. However, Supercell represented that Mr. Bakewell would not discuss the amount of these licenses. Therefore, the concern highlighted in *I/P Engine* is not applicable here.

In sum, Mr. Bakewell, Supercell's damages expert, may rely on the fact that the Licenses are not running royalties for the limited purpose of rebutting of GREE's expert's opinion about the form a reasonable royalty would take in a hypothetical negotiation between the parties.

However, as Supercell agrees, he may not reference the dollar amount of these Licenses. To the extent GREE believes the Licenses are shaky evidence for showing what form a reasonably royalty would take, it can use the traditional and appropriate means of attacking such evidence: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden. *See Daubert*, 509 U.S. at 596.

### IV. CONCLUSION

After consideration, the Court **DENIED** GREE's Motions. Dkt. No. 227 in the -70 case and Dkt. No. 198 in the -71 case.

**SIGNED this 27th day of July, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE