01:23:50

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
2                    MARSHALL DIVISION

3
   GREE, INC.,                    )(    CIVIL ACTION NOS.
4                                 )(    2:19-CV-70-JRG-RSP
        PLAINTIFFS,               )(    2:19-CV-71-JRG-RSP
5                                 )(
        VS.                       )(
6                                 )(    MARSHALL, TEXAS
   SUPERCELL OY,                  )(    SEPTEMBER 16, 2020
7                                 )(    1:51 P.M.
        DEFENDANTS.               )(
8

9                  TRANSCRIPT OF JURY TRIAL

10            VOLUME 10 - AFTERNOON SESSION

11        BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

12            UNITED STATES CHIEF DISTRICT JUDGE

13

14  APPEARANCES:

15

16  FOR THE PLAINTIFFS:

17

18  MR STEVEN D. MOORE
    KILPATRICK TOWNSEND & STOCKTON LLP
19  Two Embarcadero Center, Suite 1900
    San Francisco, CA 94111
20

21  MS. TAYLOR HIGGINS LUDLAM
    KILPATRICK TOWNSEND & STOCKTON LLP
22  4208 Six Forks Road
    Raleigh, NC 27609
23

24

25
```

```
 1   FOR THE PLAINTIFF:

 2

 3   MR. ALTON L. ABSHER III
     KILPATRICK TOWNSEND & STOCKTON LLP
 4   1001 West Fourth Street
     Winston-Salem, NC 27101
 5

 6   MR. MICHAEL T. MORLOCK
     KILPATRICK TOWNSEND & STOCKTON LLP
 7   1100 Peachtree Street, NE
     Suite 2800
 8   Atlanta, GA 30309

 9
     MS. TAYLOR J. PFINGST
10   KILPATRICK TOWNSEND & STOCKTON LLP
     Two Embarcadero Center, Suite 1900
11   San Francisco, CA 94111

12
     MS. MELISSA R. SMITH
13   GILLAM & SMITH, LLP
     303 South Washington Avenue
14   Marshall, TX 75670

15

16   FOR THE DEFENDANT:

17

18   MR. MICHAEL J. SACKSTEDER
     MR. BRYAN A. KOHM
19   MR. CHRISTOPHER L. LARSON
     MS. SHANNON E. TURNER
20   FENWICK & WEST LLP
     555 California Street, 12th Floor
21   San Francisco, CA 94104

22
     MR. GEOFFREY R. MILLER
23   FENWICK & WEST LLP
     902 Broadway, Suite 14
24   New York, NY 10010

25
```

```
 1  FOR THE DEFENDANT:

 2
    MS. JESSICA M. KAEMPF
 3  MR. JONATHAN T. MCMICHAEL
    FENWICK & WEST LLP
 4  1191 Second Ave., 10th Floor
    Seattle, WA 98101
 5

 6  MR. DERON DACUS
    THE DACUS FIRM, P.C.
 7  821 ESE Loop 323, Suite 430
    Tyler, TX 75701
 8

 9

10

11

12  COURT REPORTER:     Ms. Shelly Holmes, CSR, TCRR
                        Official Court Reporter
13                      United States District Court
                        Eastern District of Texas
14                      Marshall Division
                        100 E. Houston
15                      Marshall, Texas  75670
                        (903) 923-7464
16

17
    (Proceedings recorded by mechanical stenography, transcript
18  produced on a CAT system.)

19

20

21

22

23

24

25
```

```
          1              P R O C E E D I N G S
01:23:51  2         (Jury out.)
01:23:51  3         COURT SECURITY OFFICER:  All rise.
01:23:52  4         THE COURT:  Be seated, please.
01:51:29  5         All right.  Counsel, the Court is now prepared to
01:51:46  6  hear from both Plaintiff and Defendant with regard to any
01:51:51  7  matters either party cares to seek relief on under Federal
01:51:58  8  Rule of Civil Procedure Rule 50(a).
01:51:59  9         I will remind you that the rule is very clear when
01:52:06 10  it says if a party's been fully heard on an issue during a
01:52:13 11  jury trial and the Court finds that a reasonable jury would
01:52:16 12  not have a legally-sufficient evidentiary basis to find for
01:52:19 13  the party on that issue, the Court may resolve the issue
01:52:23 14  against the party.
01:52:23 15         So with that context, let me identify -- and let
01:52:33 16  me say I know I told everybody before we broke for lunch
01:52:36 17  that I would be back at 1:30, and it's almost 2:00 o'clock,
01:52:41 18  but in the interim, I had the privilege of reading a
01:52:45 19  34-page brief written by the Defendants.  So I took
01:52:49 20  additional time to do that and to consider that.
01:52:51 21         But let me ask at this time, for identification
01:52:56 22  purposes, what matters does Plaintiff seek to obtain relief
01:53:02 23  under Rule 50(a)?
01:53:04 24         MR. MORLOCK:  May I approach?
01:53:06 25         THE COURT:  If you'd just go to the podium, and I
```

01:53:09   1   don't want to hear argument.  I just want to identify the

01:53:13   2   legal issues upon which you seek relief under the rule.

01:53:16   3   Then I'll do the same from Defendant.

01:53:18   4        And in all likelihood, there will be relief

01:53:18   5   requested by both sides that are in direct opposition to

01:53:21   6   each other.  And in those areas, I typically will hear

01:53:23   7   competing argument at the same time.

01:53:25   8        So if you will identify yourself for the record,

01:53:28   9   counsel, and then let me know what topics or subjects the

01:53:32  10   Plaintiff seeks relief on under Rule 50(a).

01:53:36  11        MR. MORLOCK:  Thank you, Your Honor.  Michael

01:53:37  12   Morlock for Plaintiff, GREE.

01:53:37  13        We seek relief for a finding of infringement of

01:53:43  14   the asserted patents, the '594, '137, '481, '655, and '873.

01:53:49  15        THE COURT:  All five asserted patents?

01:53:53  16        MR. MORLOCK:  Yes, Your Honor.

01:53:54  17        THE COURT:  Okay.

01:53:54  18        MR. MORLOCK:  And also a finding that the four

01:53:56  19   asserted patents that have not already been found valid on

01:53:59  20   summary judgment are valid.

01:54:02  21        THE COURT:  Anything else?

01:54:10  22        MR. MORLOCK:  No, Your Honor.

01:54:11  23        THE COURT:  All right.  Let me hear from Defendant

01:54:13  24   as to what matters Defendant seeks relief under Rule 50(a).

01:54:21  25        Why don't you go to the podium, as well,

01:54:23  1    Mr. Dacus?

01:54:24  2          MR. DACUS:  I'll be happy to, Your Honor.

01:54:30  3          We have a critical question, Your Honor, to

01:54:30  4    clarify.  We filed a Rule 50(a) motion, as the Court noted.

01:54:34  5    My understanding is the Court has had some time to consider

01:54:38  6    that motion.  That motion lays out our bases for Rule

01:54:42  7    50(a).  I just wanted to make sure on the record that the

01:54:45  8    Court considers that timely filed because that is --

01:54:48  9          THE COURT:  The Court considers it timely filed,

01:54:51  10   and as I said, I took an extra 30 minutes beyond what I had

01:54:56  11   intended so that I could at least go through it initially

01:54:58  12   and see the main points that you made.

01:55:01  13         MR. DACUS:  I understand.

01:55:02  14         THE COURT:  But I'd still like you to identify for

01:55:02  15   the record the topical areas where you're seeking relief

01:55:05  16   under the rule.

01:55:05  17         MR. DACUS:  I'll do that, and I'll let

01:55:08  18   Mr. McMichael address that, Your Honor.

01:55:09  19         THE COURT:  All right.

01:55:17  20         MR. DACUS:  Thank you.

01:55:17  21         MR. MCMICHAEL:  Your Honor, in terms of the kind

01:55:20  22   of high-level topical issues, Supercell is seeking judgment

01:55:23  23   as a matter of law on the issues of non-infringement as to

01:55:27  24   the asserted patents, invalidity as to four of the five

01:55:30  25   asserted patents.  So these are the '655 patent, the '873

01:55:34   1   patent, the '137 patent, and the '481 patent.

01:55:40   2           And Supercell is also seeking judgment as a matter

01:55:42   3   of law on limited damages.

01:55:49   4           THE COURT:  Anything further?

01:55:51   5           MR. MCMICHAEL:  Your Honor, I neglected to

01:55:55   6   mention, I -- I was considering no willful infringement to

01:55:58   7   be kind of a subsection of the topical areas of

01:56:01   8   infringement, just to be clear.

01:56:03   9           THE COURT:  All right.

01:56:03  10           MR. MCMICHAEL:  Thank you, Your Honor.

01:56:08  11           THE COURT:  Well, let's start with the

01:56:10  12   diametrically opposed motions under Rule 50(a) by the

01:56:14  13   parties as to whether or not regarding the five

01:56:18  14   patents-in-suit there has been as a matter of law

01:56:20  15   infringement or as a matter of law non-infringement.

01:56:22  16           Let me hear first from the Plaintiff on that

01:56:25  17   issue, and then I'll hear responsively from the Defendant.

01:56:48  18           All right.  Counsel, if you'll identify yourself

01:56:51  19   for the record and then proceed.

01:56:52  20           MR. RINEHART:  Yes, Your Honor.  Andrew Rinehart

01:56:55  21   on behalf of the Plaintiff, GREE.

01:56:57  22           GREE moves for a finding of judgment as a -- as a

01:57:05  23   matter of law of infringement of the five asserted patents

01:57:07  24   in this case.  There are five asserted patents.

01:57:11  25           The first ground is that GREE moves for judgment

01:57:15  1  as a matter of law as to direct infringement of Claim 2 of

01:57:18  2  U.S. Patent No. 9,597,594 by Supercell through its accused

01:57:24  3  video game service Clash of Clans.

01:57:26  4       GREE moves for judgment as a matter of law as to

01:57:30  5  infringement of Claims 1, 2, and 15 of U.S. Patent No.

01:57:39  6  9,604 --

01:57:40  7       THE COURT:  Let me stop you, counsel.  Are you

01:57:42  8  going to recite each asserted patent and each patent number

01:57:45  9  by its full number?  I know what the patents-in-suit are,

01:57:48 10  and I know what the asserted claims are.

01:57:48 11       MR. RINEHART:  Very well.

01:57:51 12       THE COURT:  I assume you're telling me that GREE

01:57:53 13  seeks matter -- seeks judgment as a matter of law that all

01:57:55 14  of the asserted claims of the five patents-in-suit have

01:57:57 15  been infringed?

01:57:58 16       MR. RINEHART:  That is correct, Your Honor.

01:57:59 17       THE COURT:  Let me hear brief and targeted

01:58:01 18  argument on why you've asserted that.

01:58:03 19       MR. RINEHART:  Yes, Your Honor.

01:58:04 20       GREE has presented testimony from its technical

01:58:07 21  expert, Dr. Robert Akl, as well as testimony in the form of

01:58:11 22  documents, Supercell's source code, and witness testimony

01:58:13 23  from Supercell's own witnesses, that proves by a

01:58:17 24  preponderance of the evidence that the accused video game

01:58:20 25  services Clash of Clans, Clash Royale, and Brawl Stars each

01:58:26   1   meet all of the elements of the asserted claims of the five

01:58:31   2   asserted patents.

01:58:31   3           Dr. Akl analyzed Supercell's source code, the

01:58:37   4   accused video game services, and created demonstrative

01:58:40   5   exhibits to depict the functionality of those games that

01:58:44   6   infringes the asserted claims.

01:58:47   7           Supercell has also admitted that it owns and

01:58:49   8   operates servers in its name in the United States upon

01:58:52   9   which the source code for those games runs and executes.

01:58:55  10           Consequently, Your Honor, the Plaintiff has proven

01:59:08  11   by a preponderance of the evidence that the asserted claims

01:59:09  12   of the asserted patents are directly infringed by

01:59:12  13   Supercell -- by Supercell through the accused video game

01:59:15  14   services.  And GREE, therefore, seeks judgment as a matter

01:59:18  15   of law of infringement.

01:59:24  16           THE COURT:  All right.

01:59:25  17           MR. RINEHART:  Thank you, Your Honor.

01:59:26  18           THE COURT:  Let me hear a responsive argument from

01:59:31  19   the Defendant.  And if you wish, counsel, you can include

01:59:33  20   your willfulness arguments as a part of the argument

01:59:37  21   regarding non-infringement.

01:59:39  22           MR. MCMICHAEL:  Thank you, Your Honor.

01:59:46  23           Just to -- just to start with, I think we heard

01:59:50  24   the standard, preponderance of the evidence.  And -- and in

01:59:53  25   terms of the judgment as a matter of law standard that

01:59:54  1  Plaintiff is seeking, I believe that's just not the correct

01:59:57  2  standard for the motion.

01:59:59  3          And so I know Your Honor hasn't had a whole lot of

02:00:03  4  time to review the brief, but in our briefing, I think we

02:00:07  5  -- we talk about how Dr. Akl presented evidence as to

02:00:10  6  Claim 1 as the starting point, which is the independent

02:00:13  7  claim that's not asserted.  And he said that the Clash of

02:00:17  8  Clans layout editor meets this limitation when the user

02:00:19  9  uses the set as active button.

02:00:22  10         But as we've shown through the testimony of our

02:00:24  11 own technical expert, the -- no substantial evidence showed

02:00:27  12 that Clash of Clans actually moves the game contents from

02:00:32  13 first positions to second positions, as was cited in the

02:00:37  14 claim language.

02:00:37  15         And what actually happens is that in Clash of

02:00:40  16 Clans, the -- the layout is cleared completely and all of

02:00:43  17 the positions of the buildings are reset and then

02:00:45  18 everything is reinitialized.

02:00:47  19         So we don't believe that that limitation is

02:00:50  20 satisfied.

02:00:50  21         THE COURT:  I'm aware of that particular argument

02:00:53  22 and the competing views on what the plain and ordinary

02:00:56  23 meaning of moving is.

02:00:58  24         MR. MCMICHAEL:  Thank you, Your Honor.

02:01:04  25         As to Claim 2, we also believe that the claim

02:01:08   1   limitation when the template related to the different

02:01:11   2   player is applied, the computer moves the game contents, I

02:01:14   3   think this falls under kind of a similar -- under a similar

02:01:19   4   argument.

02:01:19   5           And we believe that this -- the evidence that GREE

02:01:20   6   presented does not support that that claim limitation is

02:01:23   7   met because a user can't actually directly apply the --

02:01:27   8   another user's layout.

02:01:29   9           And there are intervening steps that happen.  And

02:01:32   10  in those intervening steps, that template that the

02:01:34   11  Plaintiff is pointing to becomes no longer related to

02:01:39   12  the -- to the other user.

02:01:41   13          And there are also intervening steps where --

02:01:44   14  it's -- it's not as though the template just gets applied.

02:01:48   15  There are additional steps and additional, for lack of a

02:01:52   16  better word, barriers that -- that the user needs to do

02:01:55   17  between those steps happening.

02:02:03   18          THE COURT:  What else?

02:02:04   19          MR. MCMICHAEL:  Your Honor, we also believe that

02:02:06   20  because this is a method claim, I believe Dr. Akl offered

02:02:10   21  some testimony that direct infringement of this method

02:02:11   22  claim is happening when users are using this on their

02:02:15   23  mobile devices.

02:02:16   24          We heard testimony about this today that what was

02:02:19   25  actually shown by Dr. Akl was not performance of this

1307

02:02:22  1    method by taking a template from another user.  It was

02:02:26  2    actually taking it -- trying to copy and apply a template

02:02:29  3    from himself.

02:02:31  4         So just generally with respect to the fact that

02:02:33  5    this is a method claim, we believe there hasn't been

02:02:37  6    sufficient -- sufficient evidence of that, in particular,

02:02:41  7    from Dr. Akl.

02:02:41  8         And then, finally, Your Honor, as to -- to the

02:02:48  9    extent there's a -- an issue of divided infringement here,

02:02:51 10    we believe that Plaintiff has not presented substantial

02:02:55 11    evidence to support a finding that Supercell is controlling

02:02:57 12    or directing each of the method steps to be performed, or

02:03:07 13    that all of these things can be attributable to Supercell.

02:03:10 14    It was not controlling the users of its games.

02:03:14 15         THE COURT:  Well, I don't think, counsel,

02:03:16 16    substantial evidence is the test under Rule 50(a).  I think

02:03:20 17    it's clear that the Court has to find that a reasonable

02:03:23 18    jury would not have a legally-sufficient evidentiary basis

02:03:26 19    to find, or to find otherwise, which is probably a higher

02:03:31 20    standard than what you just recited.

02:03:34 21         MR. MCMICHAEL:  Your Honor, that's correct.

02:03:35 22         THE COURT:  What else on your non-infringement

02:03:37 23    argument?

02:03:38 24         MR. MCMICHAEL:  Well, to the extent we get into

02:03:41 25    the willful infringement issue, Your Honor, I think from

1308

02:03:44   1   our perspective, the evidence that Plaintiff has presented

02:03:47   2   in this case about willful infringement does not --

02:03:50   3   certainly, does not rise to the level of willful

02:03:52   4   infringement.  Really, what -- what's been pointed to in

02:03:55   5   this case is the -- I guess very circumstantial assertions

02:03:59   6   that Supercell knew certain things and didn't take action.

02:04:02   7          And, really, what that boils down to is this

02:04:05   8   position that because Supercell did not immediately change

02:04:09   9   its game, that constitutes willful infringement.

02:04:11   10          But I think the evidence that Supercell has

02:04:14   11   presented from its fact witnesses and from its expert

02:04:18   12   witness on this issue shows that this -- the conduct here,

02:04:22   13   to the extent there is infringement, just does not rise to

02:04:25   14   the level of willful infringement.

02:04:27   15          THE COURT:  All right.  Anything else you'd like

02:04:31   16   to add?

02:04:32   17          MR. MCMICHAEL:  Your Honor, I believe that's --

02:04:40   18   that covers it for the '594 patent.

02:04:42   19          THE COURT:  All right.  Mr. Rinehart, would you

02:04:46   20   like to address the willfulness issue, briefly?

02:04:49   21          MR. RINEHART:  Yes, Your Honor.

02:04:51   22          THE COURT:  I will certainly allow you to do that,

02:04:53   23   and then we'll move on to the validity/invalidity dispute.

02:05:01   24          MR. RINEHART:  Your Honor, with respect to

02:05:05   25   willfulness, we have seen evidence that Supercell was put

1309

02:05:09  1  on notice of the asserted patents through at least letters

02:05:14  2  sent from GREE to Supercell.  We've seen internal messaging

02:05:19  3  system communications between Supercell employees

02:05:22  4  evidencing awareness of the GREE patents at issue.

02:05:26  5       To the extent that Supercell was not aware of the

02:05:29  6  patents, it was willfully blind to their existence based on

02:05:32  7  its knowledge of the Japanese litigation between the two

02:05:36  8  entities.

02:05:36  9       And, finally, Supercell has not provided any

02:05:38  10  opinion of counsel as to non-infringement of the asserted

02:05:41  11  patents such that it may have a good-faith belief that it

02:05:44  12  does not infringe.

02:05:45  13       THE COURT:  All right.  Thank you.

02:05:48  14       MR. DACUS:  Your Honor?

02:05:49  15       THE COURT:  Yes.

02:05:49  16       MR. DACUS:  I think we may have had a

02:05:51  17  misunderstanding at our table about whether or not we

02:05:54  18  should address all patents.  And Ms. Kaempf needs to

02:05:58  19  address two of the patents.

02:05:59  20       THE COURT:  I want to hear all the arguments on

02:06:01  21  the issue of infringement or non-infringement.

02:06:03  22       MR. DACUS:  I understand that.

02:06:03  23       THE COURT:  If you've limit -- if you've

02:06:06  24  unintentionally limited your argument, I don't want to draw

02:06:09  25  the process out, but I want you to have an opportunity to

02:06:12  1   fully put into the record what you think you need to.

02:06:15  2         MR. DACUS:  Thank you very much.

02:06:16  3         MS. KAEMPF:  Your Honor, may I?

02:06:17  4         THE COURT:  You may.

02:06:18  5         MS. KAEMPF:  Jessica Kaempf for Supercell.

02:06:22  6         So I'm going to be addressing two of the patents,

02:06:26  7   the '873 patent and the '655 patent.

02:06:27  8         And so with respect to the '873 patent, one of the

02:06:32  9   claim elements is -- it requires displaying a frame in

02:06:39  10  accordance with a position of -- of the first touch

02:06:44  11  operation.

02:06:44  12        And it's undisputed that what the -- what is being

02:06:48  13  accused in the case -- if you remember the Brawl Stars

02:06:53  14  game, it's the red joystick on the right-hand side that

02:06:57  15  controls aiming and shooting.

02:06:59  16        And what we heard was that the position of the

02:07:01  17  alleged frame, which is the cone, is determined by the

02:07:04  18  position of the brawler, which, in turn, is controlled by

02:07:09  19  not the red joystick but the blue joystick.  And so the

02:07:14  20  touch on the red joystick does not determine the position

02:07:19  21  of the frame.

02:07:21  22        We also heard from Dr. Akl today.  You may

02:07:26  23  remember his -- his demonstrative that had the cone and

02:07:30  24  like a yellow -- a yellow arrow.  And he testified that the

02:07:35  25  cone is displayed in accordance with a direction.  And

02:07:41  1  direction is not the claim element.  The -- the claim

02:07:44  2  element is displaying a frame in accordance with a position

02:07:49  3  of the first touch operation.

02:07:51  4      And so, Your Honor, I think no reasonable juror

02:07:56  5  could find that the cone or the alleged frame is displayed

02:08:03  6  in accordance with the alleged -- with a position of the

02:08:06  7  alleged first touch operation, which is limited to the red

02:08:09  8  joystick.

02:08:11  9      THE COURT:  All right.

02:08:12  10      MS. KAEMPF:  We had a couple other arguments in

02:08:16  11  the -- in the written JMOL, but I think that is the most

02:08:19  12  important one that I'd like you to consider.

02:08:21  13      THE COURT:  Do you have anything else for me?

02:08:23  14      MS. KAEMPF:  With respect to the '655 patent, the

02:08:31  15  claim requires granting a second object if or when the

02:08:36  16  claim -- there are two asserted claims.

02:08:39  17      And -- and one -- one claim recites granting a

02:08:44  18  second object if a condition for granting the second object

02:08:47  19  is satisfied.  The other one says granting a second object

02:08:52  20  when the condition is satisfied.

02:08:53  21      We briefed this during summary judgment, and

02:08:57  22  Magistrate Judge Payne found that if the condition is

02:09:04  23  satisfied, then the granting is mandatory and limiting.  He

02:09:10  24  denied our summary judgment on the basis that there's a

02:09:14  25  factual -- that there may be a factual issue as to what the

02:09:17    1    conditions are.

02:09:18    2            But here there's -- there's no dispute between the

02:09:23    3    parties, no dispute between the experts that the claimed

02:09:26    4    condition that we're talking about is the condition of

02:09:28    5    having enough cards to fill your upgrade -- or to fill your

02:09:33    6    card meter.

02:09:34    7            There's also no dispute, and Dr. Akl confirmed

02:09:37    8    today, that once you fill up that upgrade meter, there's

02:09:42    9    still an additional condition that needs to be met, and

02:09:45   10    that is having enough gold.

02:09:47   11            So the element of granting a second object, which

02:09:53   12    is upgrading your -- upgraded card, that granting does not

02:09:57   13    occur if or when the condition for granting the second

02:10:05   14    object that Dr. Akl points to is satisfied.

02:10:11   15            In other words, if -- if or when a user fills up

02:10:15   16    their card meter, that does not -- the -- the upgraded card

02:10:21   17    does not get granted.

02:10:24   18            THE COURT:  Anything further, Ms. Kaempf?

02:10:26   19            MS. KAEMPF:  One more, Your Honor.

02:10:28   20            THE COURT:  Okay.

02:10:29   21            MS. KAEMPF:  Also, with respect to the '655

02:10:31   22    patent, the -- there is a claim element that requires

02:10:35   23    display data for selecting a first object from the

02:10:38   24    possessed objects possessed by the first user and selecting

02:10:46   25    a second user from the plurality of users.

02:10:48  1        And Dr. Akl testified that he is pointing to one

02:10:54  2   screen that only allows the user to select -- the donating

02:11:00  3   user to select a user.

02:11:02  4        We also heard from Dr. -- or GREE's survey --

02:11:09  5   survey expert who had information from Dr. Akl that the

02:11:15  6   selecting of an object occurs not by the first user -- or

02:11:22  7   it is done not by the first user but by the second user.

02:11:26  8        And the claim requires that the -- that it is the

02:11:32  9   first user that gets the display data for both selecting a

02:11:35  10  possessed -- an object from the possessed objects and

02:11:38  11  selecting a second user from the plurality of users.

02:11:42  12             THE COURT:  All right.  Thank you.

02:11:43  13             MS. KAEMPF:  Thank you.

02:11:46  14             THE COURT:  Before we leave the

02:11:48  15  infringement/non-infringement area, does Defendant have

02:11:50  16  anything else to add -- excuse me, Plaintiff, I misspoke?

02:11:55  17             MR. RINEHART:  Yes, Your Honor.

02:11:56  18             THE COURT:  All right.  Briefly, please,

02:11:59  19  Mr. Rinehart.

02:12:07  20             MR. RINEHART:  Your Honor, the Plaintiff also

02:12:10  21  seeks judgment as a matter of law with respect to indirect

02:12:13  22  infringement by Supercell resulting from the direct

02:12:18  23  infringement by users of the accused video game services;

02:12:22  24  that the evidence and argument with respect to that issue

02:12:24  25  went uncontested by Supercell's technical experts.

02:12:29  1        THE COURT:  All right.  Let's proceed to hear

02:12:34  2   competing argument from -- arguments from the parties with

02:12:36  3   regard to the validity or invalidity for the five asserted

02:12:44  4   patents-in-suit, namely the '655 patent, the '873 patent,

02:12:47  5   the '137 patent, and the '481.

02:12:53  6        Let me hear from the Defendants on this first,

02:12:55  7   since Defendant carries the burden of proof on invalidity.

02:13:13  8        MR. MCMICHAEL:  Thank you, Your Honor.

02:13:14  9        And did I hear correctly that you'd like to focus

02:13:17 10   on the '655 patent, or is this all invalidity arguments?

02:13:19 11        THE COURT:  All invalidity arguments.

02:13:22 12        MR. MCMICHAEL:  Thank you, Your Honor.

02:13:22 13        THE COURT:  Speak now or forever hold your peace.

02:13:26 14        MR. MCMICHAEL:  I -- I'm doing my best to capture

02:13:28 15   what's in -- what's in the written motion.  I think I have

02:13:31 16   it here.

02:13:32 17        With respect to the '655 patent, Defendant is

02:13:34 18   seeking judgment as a matter of law of invalidity of the

02:13:36 19   asserted claims because the evidence at trial established

02:13:38 20   that the asserted claims are invalid in light of

02:13:43 21   FarmVille -- the FarmVille game and FarmVille for Dummies,

02:13:47 22   as supported by the websites and other evidence relating to

02:13:50 23   that that was presented by Dr. Zagal.

02:13:52 24        He established that this -- these references were

02:13:54 25   publicly available and publicly accessible and it satisfied

02:13:58  1  each of the claim limitations of the asserted claims,

02:14:01  2  Claims 5 and 7.

02:14:02  3       And we believe that Plaintiff presented no

02:14:04  4  evidence in response from which a jury could determine that

02:14:08  5  those two claims are not invalid.

02:14:11  6       We also, with respect to the '655 patent, are

02:14:14  7  seeking judgment as a matter of law with respect to the

02:14:16  8  Mahajan patent that was discussed by Dr. Zagal.

02:14:20  9       It's a similar situation.  He compared that

02:14:22  10  reference to the claims of the -- the asserted claims.  And

02:14:26  11  we believe Plaintiff failed to provide rebuttal evidence

02:14:28  12  that would give a reasonable jury an ability to find those

02:14:34  13  claims invalid.

02:14:35  14       Turning to the '137 and '481 patents, we're

02:14:39  15  seeking judgment as a matter of law that the asserted

02:14:41  16  claims of those patents are invalid as anticipated and/or

02:14:46  17  rendered obvious by the prior art game Magic: The

02:14:51  18  Gathering.

02:14:51  19       Mr. Friedman testified -- I believe this was

02:14:54  20  yesterday -- about how that game was publicly assessable --

02:15:00  21  accessible and how that game relates to each of the

02:15:03  22  asserted claims of -- of these two patents.

02:15:04  23       Relatedly, we're also seeking judgment as a matter

02:15:06  24  of law with respect to the prior art reference BattleForge,

02:15:09  25  again, under anticipation and obviousness grounds.

02:15:12  1          With respect to the '873 patent, we're seeking

02:15:18  2    judgment as a matter of law that the claims are invalid as

02:15:20  3    rendered obvious by the prior art game Call of Mini Sniper,

02:15:25  4    either alone, by itself, or in view of the Sakurai patent

02:15:28  5    that Dr. Zagal discussed.

02:15:30  6          He established that that is prior art and that it

02:15:33  7    satisfies the aiming and shooting process that is discussed

02:15:38  8    in the '873 patent.

02:15:42  9          And Plaintiffs failed to provide rebuttal evidence

02:15:46  10   that would allow a jury to find those claims valid.

02:15:47  11         And then, finally, Your Honor, with respect to the

02:15:50  12   '873 patent, as well, we're seeking judgment as a matter of

02:15:53  13   law that the claims are anticipated by and rendered obvious

02:15:57  14   in light of the prior art game Sniper vs. Sniper.

02:16:02  15         And, again, Dr. Zagal testified about this

02:16:04  16   yesterday and how -- how that reference invalidates the

02:16:08  17   claims of the '873 patent.

02:16:09  18         Thank you, Your Honor.

02:16:14  19         THE COURT:  Thank you.

02:16:15  20         Let me hear a response from Defendant -- excuse

02:16:18  21   me, Plaintiff.

02:16:19  22         MR. ABSHER:  Hello, Your Honor.  Alton Absher for

02:16:30  23   Plaintiff, GREE.

02:16:30  24         THE COURT:  Please proceed.

02:16:32  25         MR. ABSHER:  I'll start with the '655 patent.

1317

02:16:34  1         The FarmVille reference, the game and the book,

02:16:41  2  neither reference -- neither the book nor the game itself

02:16:44  3  shows, for example, the claim limitation requiring

02:16:48  4  display -- display data that allows a user to select one of

02:16:53  5  a plurality of users and one of a plurality of second

02:16:57  6  objects.

02:16:58  7         There was testimony from Dr. Akl on that today.

02:17:02  8  Neither the FarmVille references nor the Mahajan patent

02:17:06  9  disclose that particular limitation, for example.

02:17:10  10        With regards to the '873 patent, both the Call of

02:17:15  11  Mini Sniper game and video and the Sniper vs. Sniper game

02:17:18  12  and video, we -- Dr. Akl presented testimony and evidence

02:17:22  13  regarding the failure of those references to disclose the

02:17:28  14  first frame indicative of a shooting effective range and

02:17:33  15  also the element present in both claims that requires the

02:17:36  16  server to control to attack in accordance with the second

02:17:41  17  touch operation.

02:17:42  18        In fact, for the Call of Mini Sniper video game,

02:17:46  19  Dr. Zagal did -- did not even argue -- did not even testify

02:17:51  20  that the server limitation -- the -- the control to attack

02:17:55  21  by the server limitation was met.

02:17:57  22        He did seem to testify that with regards to the

02:18:02  23  Sniper vs. Sniper video, that it would be obvious for

02:18:06  24  someone to do so, but he -- he did not articulate a

02:18:11  25  sufficient motivation to combine such that one of ordinary

02:18:14  1   skill in the art would have known to do so.

02:18:16  2          With that, I'd like to turn it over to my

02:18:22  3   colleague, Ms. Koballa, for discussion of the '137 and '481

02:18:28  4   patent, Your Honor.

02:18:30  5          THE COURT:  That will be fine.

02:18:33  6          MS. KOBALLA:  Good afternoon, Your Honor.  Kasey

02:18:45  7   Koballa for Plaintiff, GREE.

02:18:47  8          THE COURT:  Good afternoon.

02:18:47  9          MS. KOBALLA:  GREE responds to Supercell's motion

02:18:49  10  for a judgment as a matter of law as to invalidity and also

02:18:53  11  moves for judgment as a matter of law as to validity of

02:18:56  12  Claims 1, 2, and 15 of the '137 patent and Claims 4 and 5

02:19:00  13  for the '481 patent.

02:19:01  14         A jury would not have a legally-sufficient

02:19:03  15  evidentiary basis --

02:19:05  16         THE COURT:  Ms. Koballa, if you're going to read

02:19:07  17  to me, slow down.

02:19:08  18         MS. KOBALLA:  Okay.  I'm sorry.

02:19:09  19         A jury would not have a legally-sufficient

02:19:13  20  evidentiary basis to find that the patents are invalid as

02:19:18  21  obvious or anticipated over Magic: The Gathering or

02:19:23  22  BattleForge and the combination of Magic: Gathering and

02:19:29  23  BattleForge.

02:19:29  24         As Dr. Akl testified, the asserted prior art

02:19:35  25  Magic: The Gathering and BattleForge do not disclose each

02:19:37  1   and every element of the '137 and '481 patents, and the --

02:19:40  2   and Magic -- Magic and BattleForge combined also do not

02:19:43  3   disclose each and every element of the '137 and '481

02:19:48  4   patents.

02:19:48  5          Further, Dr. Akl testified that a person having

02:19:51  6   ordinary skill in the art would not have been motivated to

02:19:55  7   combine these references at the time of the invention.

02:19:59  8   Thus, GREE is entitled to judgment as a matter of law as to

02:20:02  9   validity of the asserted claims of the '137 and '481

02:20:09  10  patents.

02:20:09  11         THE COURT:  Thank you, Ms. Koballa.

02:20:10  12         MS. KOBALLA:  Thank you.

02:20:11  13         THE COURT:  Anything further from the Plaintiff on

02:20:12  14  the validity issue?

02:20:14  15         MR. ABSHER:  No -- no, Your Honor.

02:20:15  16         THE COURT:  Anything further from Defendant on

02:20:17  17  this topic?

02:20:19  18         MR. DACUS:  No, Your Honor.  Thank you.

02:20:20  19         THE COURT:  All right.  Then I'll proceed to hear

02:20:25  20  argument with regard to Defendant's motion for judgment as

02:20:29  21  a matter of law regarding damages.

02:20:30  22         MR. MCMICHAEL:  Thank you, Your Honor.

02:20:38  23         There are a few grounds to Defendant's motion for

02:20:44  24  judgment as a matter of law of no damages or limited

02:20:47  25  damages.  And they all come down to the point that we

02:20:49  1  believe the Plaintiff has not presented legally-sufficient

02:20:52  2  evidence for a jury to find the royalty in this case.

02:20:56  3       First, we believe that Dr. Becker's opinions

02:20:59  4  regarding the '655 and the '594 patent and with respect to

02:21:02  5  how he calculated the starting point royalties, is

02:21:06  6  unreliable in view of the fact that, for example, he

02:21:11  7  misused the survey data from Dr. Neal.

02:21:13  8       We also believe that Dr. Becker's alternative

02:21:17  9  starting rates -- I believe one was an 8.6 percent rate and

02:21:22  10  one was a 3.36 percent rate, if I'm remembering correctly,

02:21:27  11  were unreliable and -- and should not have been considered

02:21:31  12  or could not be considered by the jury as -- as reliable

02:21:33  13  evidence.

02:21:34  14       Next, we believe that Dr. Becker's opinion as to a

02:21:37  15  reasonable royalty for the '137, '481, and '873 patents is

02:21:45  16  arbitrary and unreliable.  We heard evidence from

02:21:49  17  Dr. Becker about how he got to a royalty rate for those

02:21:51  18  patents, and it was by adopting the survey results for the

02:21:54  19  '655 patent and just applying it to those three patents for

02:21:57  20  which there was no survey data.

02:21:59  21       What we didn't hear is any explanation of why an

02:22:02  22  expert or anyone would adopt the survey results for one

02:22:07  23  feature that was surveyed, as opposed to any other feature

02:22:10  24  that was surveyed.  And so we believe that portion of

02:22:12  25  Dr. Becker's analysis is unreliable.

| | | |
|---|---|---|
| 02:22:16 | 1 | We further believe that Dr. Becker failed to |
| 02:22:21 | 2 | appropriately apportion damages in calculating the |
| 02:22:24 | 3 | reasonable royalty he presented.  I think it was undisputed |
| 02:22:27 | 4 | and there was no evidence at trial suggesting that the |
| 02:22:30 | 5 | accused features drive demand such that the entire market |
| 02:22:37 | 6 | value rule would be appropriate, yet the reasonable royalty |
| 02:22:39 | 7 | that was presented by the Plaintiff is based on the total |
| 02:22:42 | 8 | revenues of Defendant and just a flat percentage of those |
| 02:22:48 | 9 | total -- total revenues. |
| 02:22:49 | 10 | We also believe and are seeking judgment as a |
| 02:22:54 | 11 | matter of law on the issue of the form of royalty.  We |
| 02:22:57 | 12 | believe the only evidence that was presented at trial that |
| 02:23:01 | 13 | goes between a lump sum and a running royalty supports a |
| 02:23:05 | 14 | lump sum.  And that's licenses produced by both sides in |
| 02:23:09 | 15 | this case.  And we believe that's the only reliable |
| 02:23:11 | 16 | evidence and that no reasonable jury could find that a |
| 02:23:14 | 17 | running royalty is appropriate under these circumstances. |
| 02:23:16 | 18 | And, last, we believe -- we're seeking judgment as |
| 02:23:25 | 19 | a matter of law as to Plaintiff's claims for provisional |
| 02:23:27 | 20 | damages.  We've discussed this a bit in prior briefing, |
| 02:23:30 | 21 | and, of course, in the written JMOL we filed. |
| 02:23:33 | 22 | But to recover provisional damages, the patentee |
| 02:23:36 | 23 | needs to prove that the accused infringer had actual notice |
| 02:23:40 | 24 | of the published patent application and that the patented |
| 02:23:42 | 25 | invention is substantially identical to the invention |

02:23:45  1    that's -- that's being framed in the published application.

02:23:48  2          And GREE here failed to present evidence that

02:23:51  3    Supercell had actual notice of the patent applications that

02:23:55  4    issued as the '137 and '655 patents before those patents

02:23:59  5    that issued.

02:24:00  6          And we also believe that suggestions that GREE

02:24:02  7    knew -- or that Supercell knew about Japanese applications

02:24:07  8    or other applications that may or may not be related to the

02:24:10  9    published applications for these asserted patents is

02:24:13  10   legally insufficient to support a finding that provisional

02:24:17  11   damages are appropriate.

02:24:18  12         Thank you, Your Honor.

02:24:21  13         THE COURT:  Thank you, counsel.

02:24:22  14         What's the response from Plaintiff?

02:24:27  15         MS. PFINGST:  Good afternoon, Your Honor.  Taylor

02:24:34  16   Pfingst on behalf of GREE.

02:24:35  17         THE COURT:  Good afternoon.

02:24:36  18         MS. PFINGST:  Dr. Becker opined that the structure

02:24:39  19   of a reasonable royalty is a running royalty expressed as a

02:24:43  20   percentage of the gross revenues from each accused game.

02:24:47  21   He used that as an initial starting point and then

02:24:50  22   apportioned to arrive at his reasonable royalty rates.  He

02:24:53  23   did not rely on the entire market value rule in this case.

02:24:55  24         Dr. Becker arrived at his starting point based on

02:24:59  25   the survey data provided by Dr. Neal and chose to weight

02:25:02  1    the survey data based on the evidence available to him in

02:25:05  2    this case provided by both Supercell and his own research

02:25:09  3    of the industry.

02:25:10  4         He also relied on the opinion of Dr. Akl that in

02:25:13  5    using the starting point for the '655 patent, that the

02:25:18  6    patents are technologically comparable in terms of the

02:25:21  7    '873, '137, and '481 patents.

02:25:26  8         And Dr. Becker opined that a 1.99 percent starting

02:25:30  9    point based on Dr. Neal's survey data and through his own

02:25:34  10   logistical regression analysis and further apportionment

02:25:38  11   led him to a 1.1 percent rate for the '655 patent.

02:25:41  12        He conducted a similar analysis for the '594

02:25:46  13   patent.  In terms of Dr. Becker's alternative starting

02:25:51  14   point, the 8.6 percent for the '655 patent also arose from

02:25:57  15   Dr. Neal's survey data.

02:25:57  16        In arriving at this number, Dr. Becker multiplied

02:26:00  17   the likelihood of being a payer -- a paying user by the

02:26:05  18   percent of users that viewed the patented feature as

02:26:08  19   important.  And this, again, comes from Dr. Neal's logistic

02:26:12  20   regression in his analysis.

02:26:14  21        Dr. Becker then went on to apportion that value,

02:26:16  22   again, not relying on the entire market value rule.  And in

02:26:19  23   this case, Supercell's witnesses testified that they were

02:26:21  24   unable to provide a value for each accused feature in this

02:26:24  25   game.  And so Dr. Becker relied on the gross revenues,

02:26:29  1  looked at Dr. Neal's survey data, weighted the evidence in

02:26:32  2  this case, and apportioned to arrive at his reasonable

02:26:35  3  royalty rate.

02:26:36  4       He relied on the same analysis for the '594 patent

02:26:40  5  for both the rate that he suggests, which is 1.27 percent,

02:26:45  6  as well as the alternative starting rates in this case.

02:26:52  7       Supercell argues that Dr. Becker improperly used

02:26:56  8  Dr. Neal's survey data, but, in fact, the evidence of

02:26:59  9  Supercell's own witnesses and the evidence presented in

02:27:02  10 this case indicates that time spent in the game is a useful

02:27:06  11 concept to value patents.

02:27:09  12      However, not all time in the game is productive

02:27:12  13 revenue-generating time.  And so the fact that some

02:27:15  14 players, based on Dr. Neal's survey data, indicated that

02:27:19  15 they would spend more time in the game for a feature that

02:27:21  16 they consider to be important was not indicative of

02:27:24  17 positive revenue-generating time.

02:27:26  18      And so Dr. Becker determined, based on Supercell's

02:27:29  19 witness's testimony about grinding in the game, that that

02:27:35  20 data was not required for his analysis here and that he

02:27:37  21 chose to use the data indicating that players would spend

02:27:42  22 less time in the game if an important feature was removed.

02:27:46  23      Dr. Becker, again, relied on Dr. Akl's technical

02:27:50  24 expertise that the '655, '137, '481, and '873 are

02:27:57  25 comparable.

02:27:57  1          And to turn to the notice element briefly,

02:28:00  2    Your Honor, for provisional damages.  There was plenty of

02:28:03  3    evidence in the record, going as far back as 2012, that

02:28:06  4    these parties have had a long-standing relationship.

02:28:09  5          We saw evidence of notice letters going back a few

02:28:12  6    years.  We saw evidence of the parties communicating.  We

02:28:15  7    saw evidence that Supercell had asserted PTAB actions

02:28:19  8    against GREE in this case.

02:28:20  9          And so we think that a judgment as a matter of law

02:28:23  10   is improper on this issue.

02:28:25  11              THE COURT:  All right.  Thank you, counsel.

02:28:27  12              MS. PFINGST:  Thank you, Your Honor.

02:28:27  13              THE COURT:  Anything further on the damages issue?

02:28:33  14              MR. DACUS:  No, Your Honor.  Thank you.

02:28:34  15              THE COURT:  All right.  I take it both sides have

02:28:39  16   been fully heard on any matters they care to raise under

02:28:43  17   Rule 50(a).

02:28:45  18              Is that correct, Plaintiff?

02:28:45  19              MR. ABSHER:  Yes, Your Honor.

02:28:46  20              THE COURT:  Is that correct, Defendant?

02:28:48  21              MR. DACUS:  We have nothing further, Your Honor.

02:28:49  22              THE COURT:  All right.

02:28:50  23              MR. DACUS:  And as I've already noted, we -- we

02:28:52  24   filed a written motion, and the Court has already

02:28:55  25   acknowledged that it has considered it, so...

| | | |
|---|---|---|
| 02:28:57 | 1 | THE COURT: All right. Then based on the matters |
| 02:29:02 | 2 | before the Court, including both what's been filed on the |
| 02:29:08 | 3 | docket and what's been presented and argued this afternoon |
| 02:29:10 | 4 | in open court, the Court finds that with regard to the |
| 02:29:15 | 5 | issue of infringement as urged by Plaintiff regarding all |
| 02:29:19 | 6 | five of the patents-in-suit and the correspondingly |
| 02:29:23 | 7 | opposite position of non-infringement urged by the |
| 02:29:25 | 8 | Defendant regarding the same five patents-in-suit, that the |
| 02:29:32 | 9 | evidence in the case is such that judgment as a matter of |
| 02:29:40 | 10 | law under Rule 50(a) should not be granted under either |
| 02:29:45 | 11 | theory, and the Court denies both the Plaintiff's motion |
| 02:29:48 | 12 | and Defendant's motion. |
| 02:29:49 | 13 | Included in this is the denial by the Court of |
| 02:29:53 | 14 | Defendant's motion regarding no willful infringement. |
| 02:29:57 | 15 | Regarding validity and invalidity concerning four |
| 02:30:00 | 16 | of the five asserted patents, particularly being the '655, |
| 02:30:05 | 17 | the '873, the '137, and the '481 patents, the Court finds, |
| 02:30:12 | 18 | likewise, that the diametrically opposed arguments from the |
| 02:30:16 | 19 | parties are such that neither one rises to the level of |
| 02:30:19 | 20 | being granted under Rule 50(a). |
| 02:30:22 | 21 | And, correspondingly, the Court denies both |
| 02:30:27 | 22 | Plaintiff's motion and Defendant's motion with regard to |
| 02:30:31 | 23 | the issue of validity or invalidity as a matter of law. |
| 02:30:33 | 24 | Lastly, with regard to the issue of damages, the |
| 02:30:36 | 25 | Court denies the Defendant's motion that there should be a |

02:30:43    1    finding of no damages or limited damages as a matter of law

02:30:47    2    under Rule 50(a).

02:30:48    3         And, in short, counsel, each of the motions urged

02:30:52    4    this afternoon under Rule 50(a) of the Federal Rules of

02:30:52    5    Civil Procedure with regard to the issues before the Court

02:30:58    6    in this case are denied.

02:30:59    7         I will say that I appreciate your argument, and

02:31:01    8    it's always a pleasure for the Court to hear from young

02:31:07    9    lawyers arguing on the record in court.  And I always find

02:31:12   10    it enlightening and edifying.

02:31:15   11         Now, I have 2:30 by the clock on the bench.  I'm

02:31:21   12    going to take about a 30-minute recess.  And about 3:00

02:31:24   13    o'clock, I'd like those of you that are going to

02:31:27   14    participate in the informal charge conference to come to

02:31:29   15    the door to chambers, and we will let you in, and we will

02:31:32   16    meet in my office and review your competing proposals

02:31:35   17    regarding the Court's final jury instructions and the

02:31:38   18    verdict form, informally.

02:31:42   19         Everyone who has appeared in the case is welcome

02:31:43   20    to participate.  It is an informal discussion, and the

02:31:47   21    Court wants to hear in an open and fulsome manner from

02:31:54   22    everybody about the reasons behind the areas where you are

02:31:57   23    not in agreement.

02:31:58   24         And I'll take that into consideration and

02:32:02   25    carefully digest what you've presented in that informal

02:32:06    1    charge conference as a part of subsequently producing what

02:32:10    2    I believe the appropriate and proper final jury charge and

02:32:16    3    verdict form should be.

02:32:18    4          So, with that, I will see you in chambers in 30

02:32:24    5    minutes.

02:32:24    6          The Court stands in recess.

02:32:24    7          COURT SECURITY OFFICER:  All rise.

02:42:48    8          (Recess.)

02:43:56    9          (Jury out.)

05:31:29   10          COURT SECURITY OFFICER:  All rise.

05:31:31   11          THE COURT:  Be seated, please.

05:32:01   12          All right.  Counsel, since we recessed for lunch

05:32:11   13    and I excused the jury, I have heard argument and

05:32:16   14    considered both your written and oral submissions regarding

05:32:20   15    motions under Rule 50(a) and have ruled on the bench --

05:32:25   16    from the bench, rather, regarding those motions.

05:32:28   17          We've also conducted a lengthy and informal charge

05:32:31   18    conference in chambers where the latest version of the

05:32:35   19    parties' competing proposals regarding the final jury

05:32:41   20    instructions and verdict have been reviewed by counsel for

05:32:44   21    the parties and the Court.

05:32:45   22          And after a lengthy and fulsome discussion, the

05:32:48   23    Court has considered carefully all the input from counsel

05:32:52   24    for the parties and generated what the Court believes to be

05:32:55   25    the proper and appropriate final jury instruction and

05:32:59  1    verdict form.

05:33:01  2         Printed copies of those documents have been

05:33:05  3    delivered to counsel for both sides with an opportunity to

05:33:10  4    review and consider the same.

05:33:11  5         And I'm now prepared to conduct on the record a

05:33:14  6    formal charge conference where we will review both the

05:33:19  7    charge and the verdict form, and I'll entertain any

05:33:23  8    objections on the record that either party wishes to offer

05:33:25  9    in regard to any portion thereof or any provision that has

05:33:29  10   been omitted and a party believes the same should have been

05:33:33  11   included.

05:33:33  12        With that, what I would ask is that whoever is

05:33:37  13   going to represent Plaintiff and whoever is going to

05:33:40  14   represent Defendant, if you would go to the podium and

05:33:44  15   remain there jointly.

05:33:46  16        My intention is to start with the final jury

05:33:49  17   instructions, and to go through each page page-by-page and

05:33:57  18   inquire at each page if either Plaintiff or Defendant have

05:33:58  19   any objections to either anything included on that page or

05:34:02  20   anything omitted on that page.

05:34:04  21        At that juncture, if you have an objection to

05:34:07  22   lodge, please do so.  I'll listen and respond.  And then

05:34:10  23   we'll move on to the next page, and we will walk through

05:34:12  24   both the charge and the verdict form on that same

05:34:16  25   page-by-page basis to ensure that each is thoroughly

05:34:19  1    covered and nothing's missed.

05:34:21  2           So, with that, whoever is going to represent in

05:34:27  3    this regard Plaintiff and Defendant, if you will go to the

05:34:29  4    podium.

05:34:30  5           To the extent you're going to share those

05:34:33  6    responsibilities, then whoever is going to start for

05:34:33  7    Plaintiff and Defendant, go to the podium.  And then if

05:34:34  8    somebody else is going to pick up midstream, they can

05:34:34  9    simply replace whoever steps away from the podium.

05:34:38  10          All right?

05:34:44  11          And we'll begin with the final jury instructions.

05:34:50  12          Mr. Morlock, you're representing the Plaintiff at

05:34:52  13    this point?

05:34:52  14          MR. MORLOCK:  Yes, Your Honor.

05:34:53  15          THE COURT:  All right.  And, Ms. Kaempf, you're

05:34:56  16    representing the Defendant?

05:34:58  17          MS. KAEMPF:  Yes, Your Honor.

05:34:58  18          THE COURT:  All right.  Turning to the final jury

05:35:00  19    instructions, we'll begin with the first page.

05:35:03  20          Is there objection here from either Plaintiff or

05:35:05  21    Defendant?

05:35:08  22          MS. KAEMPF:  No, Your Honor.

05:35:09  23          MR. MORLOCK:  No, Your Honor.

05:35:10  24          THE COURT:  Turning then to Page 2, is there

05:35:11  25    objection here from either Plaintiff or Defendant?

| | | |
|---|---|---|
| 05:35:16 | 1 | MS. KAEMPF:  No, Your Honor. |
| 05:35:17 | 2 | MR. MORLOCK:  No, Your Honor. |
| 05:35:18 | 3 | THE COURT:  Turning to Page 3, is there objection |
| 05:35:22 | 4 | from either party? |
| 05:35:24 | 5 | MS. KAEMPF:  No, Your Honor. |
| 05:35:25 | 6 | MR. MORLOCK:  No, Your Honor. |
| 05:35:27 | 7 | THE COURT:  Turning next to Page 4, is there |
| 05:35:30 | 8 | objection from either party? |
| 05:35:35 | 9 | MS. KAEMPF:  No, Your Honor. |
| 05:35:36 | 10 | MR. MORLOCK:  No, Your Honor. |
| 05:35:38 | 11 | THE COURT:  Turning next to Page 5 of the final |
| 05:35:44 | 12 | jury instructions, is there objection here from either |
| 05:35:46 | 13 | Plaintiff or Defendant? |
| 05:35:49 | 14 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:35:51 | 15 | MS. KAEMPF:  No, Your Honor. |
| 05:35:55 | 16 | THE COURT:  All right.  Turning next to Page 6, is |
| 05:35:57 | 17 | there objection from either party? |
| 05:36:05 | 18 | MR. MORLOCK:  No, Your Honor. |
| 05:36:06 | 19 | MS. KAEMPF:  None from Defendant, Your Honor. |
| 05:36:08 | 20 | THE COURT:  All right.  Next is Page 7, is there |
| 05:36:12 | 21 | objection here from either party? |
| 05:36:19 | 22 | MS. KAEMPF:  No, Your Honor. |
| 05:36:19 | 23 | MR. MORLOCK:  No, Your Honor. |
| 05:36:20 | 24 | THE COURT:  Turning then to Page 8, is there |
| 05:36:24 | 25 | objection from either party? |

| | | |
|--|--|--|
| 05:36:33 | 1 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:36:35 | 2 | MS. KAEMPF:  No, Your Honor. |
| 05:36:37 | 3 | THE COURT:  All right.  Then turning next to |
| 05:36:42 | 4 | Page 9 of the final jury instructions, is there objection |
| 05:36:45 | 5 | here from either party? |
| 05:36:50 | 6 | MS. KAEMPF:  None from Defendant, Your Honor. |
| 05:36:52 | 7 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:36:56 | 8 | THE COURT:  Turning next to Page 10, is there |
| 05:36:58 | 9 | objection from either party? |
| 05:37:06 | 10 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:37:09 | 11 | MS. KAEMPF:  No, Your Honor. |
| 05:37:16 | 12 | THE COURT:  Turning then to Page 11 of the final |
| 05:37:19 | 13 | jury instructions, is there objection here from either |
| 05:37:21 | 14 | Plaintiff or Defendant? |
| 05:37:30 | 15 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:37:32 | 16 | MS. KAEMPF:  Your Honor, there is one issue that I |
| 05:37:48 | 17 | would like to raise, if I may, and I apologize that this |
| 05:37:51 | 18 | didn't come up during the informal conference. |
| 05:37:54 | 19 | But the language at the top of Page 11 that says: |
| 05:37:57 | 20 | When the word "comprising" is used, a product that includes |
| 05:38:01 | 21 | all the limitations or elements of the claim, as well as |
| 05:38:06 | 22 | additional elements, is covered by the claim. |
| 05:38:08 | 23 | THE COURT:  Yes. |
| 05:38:08 | 24 | MS. KAEMPF:  And I think we -- this came up during |
| 05:38:10 | 25 | the JMOL motion briefing, that in certain instances, |

05:38:13  1   additional elements -- inclusion of certain additional

05:38:18  2   elements, depending on the claim language, such as when

05:38:20  3   granting of the second object is mandatory and limiting,

05:38:25  4   when -- when the claimed condition is satisfied.  The

05:38:31  5   inclusion of additional elements between the condition

05:38:33  6   being satisfied and the consequence of that condition, the

05:38:40  7   granting of the second object, such -- those additional

05:38:42  8   elements would preclude a finding of infringement.

05:38:47  9        THE COURT:  And you're offering those comments as

05:38:51 10   an objection, Ms. Kaempf?

05:38:54 11        MS. KAEMPF:  Yes, Your Honor.

05:38:54 12        THE COURT:  All right.  That objection is

05:38:56 13   overruled.

05:38:57 14        Is there anything else from either party on

05:39:00 15   Page 11?

05:39:02 16        MS. KAEMPF:  No, Your Honor.

05:39:03 17        MR. MORLOCK:  No, Your Honor.

05:39:04 18        THE COURT:  Then we'll turn next to Page 12 of the

05:39:08 19   final jury instructions.  Is there objection here from

05:39:10 20   either party?

05:39:12 21        MR. MORLOCK:  Yes, Your Honor.

05:39:15 22        Plaintiff respectfully objects to the inclusion on

05:39:18 23   Page 12 of the requirement of a particular sequence of

05:39:24 24   steps required by the claims of the '137 and the '481

05:39:28 25   patent, in the jury instructions.

| | | |
|---|---|---|
| 05:39:29 | 1 | THE COURT:  All right.  Is there any objection to |
| 05:39:34 | 2 | anything on Page 12 from the Defendant? |
| 05:39:36 | 3 | MS. KAEMPF:  No, Your Honor. |
| 05:39:37 | 4 | THE COURT:  Plaintiff's objection on Page 12 is |
| 05:39:46 | 5 | overruled. |
| 05:39:47 | 6 | Unless there's something further there, we'll turn |
| 05:39:50 | 7 | to Page 13 of the final jury instructions. |
| 05:39:52 | 8 | And I'll ask if either party has any objection to |
| 05:39:55 | 9 | anything here? |
| 05:39:58 | 10 | MS. KAEMPF:  Your Honor, we respectfully -- |
| 05:40:03 | 11 | Supercell respectfully objects to the -- to the omission of |
| 05:40:10 | 12 | the joint infringement language, because we believe that, |
| 05:40:13 | 13 | at least for certain claims, the method claims will only be |
| 05:40:21 | 14 | infringed under a joint infringement theory. |
| 05:40:22 | 15 | THE COURT:  All right.  Anything here on Page 13 |
| 05:40:27 | 16 | from Plaintiff? |
| 05:40:28 | 17 | MR. MORLOCK:  No, Your Honor. |
| 05:40:30 | 18 | THE COURT:  All right.  Defendant's objection |
| 05:40:32 | 19 | regarding Page 13 is overruled. |
| 05:40:36 | 20 | Turning next to Page 14, is there any objection |
| 05:40:41 | 21 | here from either Plaintiff or Defendant? |
| 05:40:44 | 22 | MS. KAEMPF:  No, Your Honor. |
| 05:40:46 | 23 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:40:48 | 24 | Your Honor. |
| 05:40:48 | 25 | THE COURT:  All right.  Then turning to Page 15, |

1335

| | | |
|---|---|---|
| 05:40:55 | 1 | I'll ask if there's objection here from either party? |
| 05:40:59 | 2 | MS. KAEMPF:  No, Your Honor. |
| 05:41:00 | 3 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:41:05 | 4 | Your Honor. |
| 05:41:05 | 5 | THE COURT:  Turning next to Page 16 of the final |
| 05:41:08 | 6 | jury instructions, is there objection here from either |
| 05:41:11 | 7 | party? |
| 05:41:13 | 8 | MS. KAEMPF:  Not from Defendant, Your Honor. |
| 05:41:15 | 9 | MR. MORLOCK:  Your Honor, Plaintiff respectfully |
| 05:41:18 | 10 | objects to the inclusion of instructions regarding the |
| 05:41:21 | 11 | written description requirement, as there's insufficient |
| 05:41:25 | 12 | evidence presented at trial. |
| 05:41:29 | 13 | THE COURT:  That's overruled. |
| 05:41:30 | 14 | Anything further? |
| 05:41:32 | 15 | MR. MORLOCK:  None from Plaintiff, Your Honor. |
| 05:41:35 | 16 | THE COURT:  Then we'll turn to Page 17.  Is there |
| 05:41:38 | 17 | objection here from either party? |
| 05:41:42 | 18 | MR. MORLOCK:  Your Honor, just from Plaintiff, |
| 05:41:47 | 19 | briefly.  The same objection as to Page 16 continues to |
| 05:41:50 | 20 | Page 17. |
| 05:41:51 | 21 | THE COURT:  I understand.  That's overruled. |
| 05:41:55 | 22 | MR. MORLOCK:  Okay. |
| 05:41:55 | 23 | THE COURT:  Anything from Defendant here? |
| 05:41:58 | 24 | MS. KAEMPF:  No, Your Honor. |
| 05:41:58 | 25 | THE COURT:  All right.  Then I'll turn next to |

05:42:02  1  Page 18 of the final jury instructions, and ask if either

05:42:06  2  party has any objection to anything included or omitted

05:42:08  3  from this page?

05:42:13  4          MR. MORLOCK:  None from Plaintiff, Your Honor.

05:42:16  5          MS. KAEMPF:  No, Your Honor.

05:42:28  6          THE COURT:  Turning next to Page 19, is there

05:42:31  7  objection here from either party?

05:42:47  8          MS. TURNER:  Sorry, Your Honor.  Shannon Turner.

05:42:49  9  I'm swapping out for Ms. Kaempf for Supercell.

05:42:52  10         THE COURT:  That's fine.  We're on Page 19.

05:42:55  11         Is there any objection from Defendant or

05:42:57  12  Plaintiff?

05:42:57  13         MS. TURNER:  May I briefly turn back to Page 18,

05:43:01  14  please, and lodge some objections?

05:43:05  15         THE COURT:  What's your objection on Page 18?

05:43:08  16         MS. TURNER:  On Page 18, under No. 2, that any

05:43:11  17  patent that issued or any printed publication, we object to

05:43:15  18  not including the words "including videos."  And the

05:43:20  19  same --

05:43:20  20         THE COURT:  The -- go ahead.

05:43:20  21         MS. TURNER:  And the same objection under 4, any

05:43:23  22  patents that issued or any printed publications, we object

05:43:28  23  to not including videos.

05:43:30  24         THE COURT:  All right.  That objection is

05:43:31  25  overruled.

| | | |
|---|---|---|
| 05:43:32 | 1 | MS. TURNER:  Your Honor, one other objection on |
| 05:43:34 | 2 | this page.  We object to the removal of Appendix A, which |
| 05:43:40 | 3 | listed the prior art references. |
| 05:43:41 | 4 | THE COURT:  That's overruled. |
| 05:43:42 | 5 | I'll turn back to Page 19.  Is there any objection |
| 05:43:46 | 6 | here from either party? |
| 05:43:48 | 7 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:43:49 | 8 | Your Honor. |
| 05:43:49 | 9 | MS. TURNER:  No objection from Defendant. |
| 05:43:50 | 10 | THE COURT:  Then turning next to Page 20.  Is |
| 05:43:53 | 11 | there objection here from either party? |
| 05:44:03 | 12 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:44:05 | 13 | Your Honor. |
| 05:44:05 | 14 | MS. TURNER:  No objection from Defendant. |
| 05:44:10 | 15 | THE COURT:  Turning then to Page 21 of the final |
| 05:44:13 | 16 | jury instructions, is there objection here from either |
| 05:44:16 | 17 | party? |
| 05:44:21 | 18 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:44:24 | 19 | Your Honor. |
| 05:44:24 | 20 | MS. TURNER:  No objection from Supercell. |
| 05:44:26 | 21 | THE COURT:  Turning then to Page 22, is there |
| 05:44:31 | 22 | objection here from either party? |
| 05:44:43 | 23 | MR. MORLOCK:  Your Honor, the Plaintiff |
| 05:44:45 | 24 | respectfully objects to the inclusion of secondary |
| 05:44:48 | 25 | consideration factors that were not addressed with evidence |

| | | |
|---|---|---|
| 05:44:51 | 1 | at trial. |
| 05:44:52 | 2 | THE COURT: You want to be more specific as to |
| 05:44:54 | 3 | which of these factors you believe were not addressed at |
| 05:44:57 | 4 | trial? |
| 05:44:58 | 5 | MR. MORLOCK: Yes, Your Honor. Specifically, on |
| 05:45:00 | 6 | Page 22, Item No. 2 and 3 and 4. |
| 05:45:06 | 7 | THE COURT: All right. |
| 05:45:08 | 8 | MS. TURNER: Your Honor, Supercell objects to the |
| 05:45:11 | 9 | omission of the secondary considerations of |
| 05:45:15 | 10 | non-obviousness, whether the claimed invention achieved |
| 05:45:19 | 11 | unexpected results, whether persons having ordinary skill |
| 05:45:23 | 12 | in the art of the invention expressed surprise or disbelief |
| 05:45:23 | 13 | regarding the claimed invention, and whether the inventor |
| 05:45:26 | 14 | proceeded contrary to accepted wisdom in the field. |
| 05:45:29 | 15 | THE COURT: All right. Counsel, both objections |
| 05:45:30 | 16 | are overruled. |
| 05:45:34 | 17 | MS. TURNER: Your Honor, I have one other |
| 05:45:35 | 18 | objection to this page. |
| 05:45:37 | 19 | THE COURT: Please present it. |
| 05:45:39 | 20 | MS. TURNER: Thank you. On the last sentence, in |
| 05:45:40 | 21 | deciding what the level of ordinary skill is, we object to |
| 05:45:43 | 22 | the omission of the language "in the field of gaming." |
| 05:45:45 | 23 | THE COURT: All right. That's overruled. |
| 05:45:50 | 24 | Turning next to Page 23 of the final jury |
| 05:45:52 | 25 | instructions, is there objection here from either Plaintiff |

| | | |
|---|---|---|
| 05:45:54 | 1 | or Defendant? |
| 05:45:58 | 2 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:46:00 | 3 | Your Honor. |
| 05:46:00 | 4 | MS. TURNER:  No objection from Defendant. |
| 05:46:03 | 5 | THE COURT:  Turning then to Page 24, is there |
| 05:46:05 | 6 | objection from either party? |
| 05:46:16 | 7 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:46:17 | 8 | Your Honor. |
| 05:46:17 | 9 | MS. TURNER:  No objection from Defendant. |
| 05:46:20 | 10 | THE COURT:  Turning then to Page 25, is there any |
| 05:46:23 | 11 | objection here? |
| 05:46:23 | 12 | MR. MORLOCK:  No objection from Plaintiff, |
| 05:46:30 | 13 | Your Honor. |
| 05:46:30 | 14 | MS. TURNER:  Your Honor, Supercell objects to the |
| 05:46:43 | 15 | omission of the language in determining -- or as a separate |
| 05:46:50 | 16 | paragraph from the Georgia-Pacific factors:  In determining |
| 05:46:53 | 17 | a reasonable royalty, you may also consider evidence |
| 05:46:55 | 18 | concerning the availability of non-infringing alternatives |
| 05:46:57 | 19 | of the patented invention.  A non-infringing alternative |
| 05:47:01 | 20 | must be acceptable -- must be an acceptable product that is |
| 05:47:04 | 21 | licensed under the patent or that does not infringe the |
| 05:47:06 | 22 | patent. |
| 05:47:07 | 23 | THE COURT:  That objection is overruled. |
| 05:47:10 | 24 | Is there anything further from either party on |
| 05:47:14 | 25 | Page 25? |

05:47:16   1              MS. TURNER:  Not from Defendant.

05:47:17   2              THE COURT:  Anything further on this page from

05:47:19   3   Plaintiff?

05:47:20   4              MR. MORLOCK:  Nothing further, Your Honor.

05:47:21   5              THE COURT:  Then we'll turn to Page 26 of the

05:47:23   6   final jury instructions.  Is there objection here from

05:47:27   7   either party?

05:47:33   8              MR. MCMICHAEL:  Your Honor, just briefly.

05:47:35   9         Supercell objects to the omission of language

05:47:36   10  regarding a provisional damages period.  And, specifically,

05:47:39   11  what we proposed is the construction -- constructive

05:47:42   12  knowledge, willful blindness, and knowledge of the related

05:47:46   13  patents and -- or related pat -- published patent

05:47:50   14  applications is not sufficient to satisfy the actual notice

05:47:53   15  requirement, and that, similarly, alleged knowledge by

05:47:55   16  outside counsel and general monitoring of competitor

05:47:58   17  activities or patents is likewise insufficient to satisfy

05:48:02   18  the actual notice requirement.

05:48:03   19             THE COURT:  All right.  Mr. McMichael, that

05:48:06   20  objection is overruled.

05:48:08   21         Anything further from either party on Page 26?

05:48:12   22             MR. MCMICHAEL:  Your Honor, I don't know that this

05:48:14   23  is specific to Page 26, but we would also object in the

05:48:20   24  general discussion of damages to the omission of an

05:48:24   25  instruction regarding the entire market value rule.

05:48:26   1              THE COURT:  That's overruled.

05:48:27   2              MR. MCMICHAEL:  Thank you, Your Honor.

05:48:33   3              MR. MORLOCK:  No objection to Page 26 from

05:48:36   4   Plaintiff, Your Honor.

05:48:36   5              THE COURT:  Then let's turn to Page 27.  Let me

05:48:39   6   ask if either party has an objection to anything here or

05:48:42   7   anything that was omitted from this page?

05:48:45   8              MR. MORLOCK:  Your Honor, Plaintiff respectfully

05:48:47   9   objects to the omission of inclusion of an instruction

05:48:50   10  regarding willfulness enhancement.

05:48:52   11             THE COURT:  Overruled.

05:48:54   12             Anything from Defendant here?

05:48:57   13             MR. MCMICHAEL:  No objection from Defendant.

05:48:59   14             THE COURT:  All right.  Page 28 merely references

05:49:03   15  closing arguments to be presented by counsel.  And I assume

05:49:06   16  you have no objections to Page 28.

05:49:09   17             So we'll turn to Page 29, and I'll ask if there's

05:49:13   18  any objection to either Page 28 or Page 29?

05:49:16   19             MR. MCMICHAEL:  Your Honor, this isn't so much an

05:49:19   20  objection, but I don't know if having Defendants being

05:49:22   21  plural on Page 28 will cause any confusion.  I sort of

05:49:26   22  doubt it will, but I just wanted to note it.

05:49:32   23             THE COURT:  Well, quite honestly, counsel, what

05:49:38   24  you're seeing is usually reserved for the Court's copy

05:49:42   25  only.

05:49:42  1          My intention is merely to show what's bracketed at

05:49:46  2    the top of Page 28 and what's given to the jury when they

05:49:49  3    retire simply to say:  Attorneys present closing arguments.

05:49:53  4          MR. MCMICHAEL:  Understood, Your Honor.

05:49:54  5          THE COURT:  With that clarification, do you have

05:49:56  6    any objection?

05:49:56  7          MR. MCMICHAEL:  We do not, Your Honor.  Thank you.

05:49:58  8          THE COURT:  Any objection to anything on Page 29,

05:50:01  9    counsel?

05:50:01  10         MR. MORLOCK:  No objection from Plaintiff,

05:50:03  11   Your Honor.

05:50:03  12         MR. MCMICHAEL:  No objection from Defendant.

05:50:05  13         THE COURT:  Any objection to anything on the final

05:50:08  14   page of the final jury instructions, Page 30?

05:50:11  15         MR. MORLOCK:  No objection from Plaintiff,

05:50:14  16   Your Honor.

05:50:14  17         MR. MCMICHAEL:  And no objection from Defendant.

05:50:17  18         THE COURT:  All right.  Then we'll turn to the

05:50:19  19   verdict form.

05:50:19  20         We'll begin with the cover page, which is Page 1.

05:50:28  21         Is there an objection here from either Plaintiff

05:50:32  22   or Defendant?

05:50:34  23         MR. DACUS:  None from Defendant, Your Honor.

05:50:35  24         MR. MORLOCK:  None from Plaintiff, Your Honor.

05:50:37  25         THE COURT:  Page 2, is there any objection from

05:50:41  1    either party?

05:50:42  2              MR. DACUS:  None from Defendant.

05:50:43  3              MR. MORLOCK:  None from Plaintiff, Your Honor.

05:50:44  4              THE COURT:  Page 3, is there any objection from

05:50:47  5    either party?

05:50:48  6              MR. DACUS:  Not from Defendant.

05:50:49  7              MR. MORLOCK:  None for Plaintiff, Your Honor.

05:50:51  8              THE COURT:  Page 4 where Question 1 is found, is

05:50:55  9    there objection here from either party?

05:50:56  10             MR. DACUS:  Yes, Your Honor.  Supercell objects to

05:50:59  11   the Court's failure to ask the infringement question on a

05:51:04  12   claim-by-claim basis.

05:51:06  13             THE COURT:  Is there any objection from Plaintiff,

05:51:09  14   Your Honor?

05:51:09  15             MR. MORLOCK:  No objection from Plaintiff,

05:51:11  16   Your Honor.

05:51:11  17             THE COURT:  Defendant's objection is overruled.

05:51:13  18             Turning next to Page 5 of the verdict form where

05:51:13  19   Question 2 is found, is there objection here from either

05:51:16  20   party?

05:51:16  21             MR. DACUS:  Not from Defendant, Your Honor.

05:51:17  22             MR. MORLOCK:  No objection from Plaintiff,

05:51:19  23   Your Honor.

05:51:19  24             THE COURT:  Turning then to Page 6 where

05:51:21  25   Question 3 of the verdict form is located.

1344

05:51:23  1          Is there objection here from either party?

05:51:25  2          MR. DACUS:  Your Honor, Supercell objects to the

05:51:28  3  inclusion of Question 3 before the damages question and

05:51:33  4  believes that it should be -- the willfulness question

05:51:36  5  should be asked at the end of the verdict form after the

05:51:39  6  damages question.

05:51:40  7          THE COURT:  Any objection from Plaintiff with

05:51:42  8  regard to anything on Page 6?

05:51:44  9          MR. MORLOCK:  No objection from Plaintiff,

05:51:46 10  Your Honor.

05:51:46 11          THE COURT:  Defendant's objection is overruled.

05:51:48 12          Turning then to Page 7 where Question 4A of the

05:51:53 13  verdict form is found, together with the instructions, is

05:51:56 14  there objection here from earth party?

05:51:59 15          MR. DACUS:  Yes, Your Honor.  Supercell has an

05:52:00 16  objection, and I want to focus on the last four words in

05:52:03 17  the question that say "through the date of trial."

05:52:08 18  Including that is potentially inconsistent with Question 4B

05:52:12 19  which ask -- asks whether they award a lump sum or a

05:52:16 20  running royalty.

05:52:17 21          If the jury was to award a lump sum and yet write

05:52:24 22  in a damage amount, those -- I believe that might be an

05:52:28 23  inconsistent verdict because they're awarding a lump sum

05:52:32 24  through the expiration of the patents, yet the question

05:52:35 25  asks through date of trial.  S.

05:52:35  1          O we would object to those one, two, three --

05:52:38  2    that's actually five words "through the date of trial."  If

05:52:40  3    the Court would strike those five words, we would have no

05:52:43  4    objection.

05:52:44  5          THE COURT:  Is there any objection here from

05:52:45  6    Plaintiff?

05:52:45  7          MR. MORLOCK:  No objection from Plaintiff,

05:52:47  8    Your Honor.

05:52:47  9          THE COURT:  I'm going to grant Defendant's

05:52:50  10   objection.  I'll modify Question 4A to end after the word

05:52:54  11   "infringement."

05:52:56  12         MR. DACUS:  Thank you, Your Honor.

05:52:56  13         THE COURT:  Turning then to Page 8 where

05:52:59  14   Question 4B is found, is there objection here from either

05:53:02  15   party?

05:53:03  16         MR. DACUS:  Not from Supercell.

05:53:04  17         MR. MORLOCK:  No objection from Plaintiff,

05:53:05  18   Your Honor.

05:53:05  19         THE COURT:  Finally, turning to Page 9, which is

05:53:09  20   the final page of the verdict form calling for the

05:53:13  21   signature of the jury foreperson, is there objection from

05:53:15  22   either party here?

05:53:16  23         MR. DACUS:  Not from Supercell.

05:53:17  24         MR. MORLOCK:  No objection from Plaintiff,

05:53:18  25   Your Honor.

1346

05:53:18   1          THE COURT:  All right.  Thank you, counsel.  That

05:53:20   2   completes the formal charge conference.

05:53:24   3          Let me remind both sides to be prepared tomorrow

05:53:35   4   morning before I bring in the jury to read into the record

05:53:39   5   any items from the list of pre-admitted exhibits used

05:53:45   6   during today's portion of the trial.

05:53:46   7          Let me inquire of both sides.  Who on each side

05:53:50   8   will be presenting closing arguments?

05:53:52   9          MS. SMITH:  Mr. Moore for Plaintiff, Your Honor.

05:53:54   10          MR. DACUS:  Mr. Sacksteder on behalf of Supercell,

05:53:57   11   Your Honor.

05:53:57   12          THE COURT:  All right.  Ms. Smith -- Ms. Smith,

05:54:01   13   please be sure that Mr. Moore is aware that he must use at

05:54:04   14   least 50 percent of his closing time in his first closing

05:54:09   15   argument.

05:54:09   16          MS. SMITH:  I've shared that with him already,

05:54:12   17   Your Honor.

05:54:12   18          THE COURT:  All right.  My intention is to make

05:54:14   19   the one change that I have approved by granting Defendant's

05:54:18   20   objection to one of the questions in the verdict form,

05:54:23   21   otherwise, to reproduce eight copies of the final jury

05:54:27   22   instructions and one clean copy of the verdict form to be

05:54:29   23   sent back to the jury when they retire to deliberate

05:54:32   24   tomorrow.

05:54:32   25          If there are any issues that arise as a part of

05:54:39    1    the parties' overnight meet-and-confer obligations with

05:54:42    2    regard to the possible use of demonstratives during closing

05:54:47    3    arguments tomorrow, I would encourage both sides to work

05:54:51    4    diligently to try to avoid any such problems.

05:54:54    5            If there are unavoidable problems, despite

05:54:58    6    strenuous and concerted efforts to meet and confer, I will

05:55:01    7    be available by 7:30 tomorrow morning in chambers to take

05:55:06    8    those up with counsel.  And I will expect the same

05:55:09    9    overnight reporting and early morning binder from the

05:55:13   10    parties that we've used on demonstrative disputes

05:55:17   11    throughout the trial.

05:55:17   12            Are there any questions from either side before we

05:55:19   13    recess for the evening?

05:55:22   14            MS. SMITH:  Your Honor, we have not built in an

05:55:24   15    exchange schedule for closing demonstratives.  So we -- we

05:55:28   16    were planning on doing it right before closing, giving the

05:55:32   17    Court some time to rule, perhaps closer to 7:00 than

05:55:37   18    allowing the other side to have our demonstratives

05:55:40   19    overnight.

05:55:41   20            THE COURT:  Well, I will say this, Ms. Smith:  As

05:55:43   21    you well know, one of the things the Court strives to avoid

05:55:49   22    wherever and whenever possible are objections that might

05:55:52   23    arise during closing arguments.

05:55:54   24            I can understand your willingness -- or your

05:55:59   25    preference not to show your hand, so to speak, any longer

05:56:03  1  than necessary, and I'm sure the Defendant feels the same

05:56:05  2  way about their arguments, but I don't want to leave

05:56:09  3  unaddressed the possibility that a demonstrative is viewed

05:56:15  4  as objectionable by the other side, and there's not an

05:56:18  5  opportunity to address it before we get into the middle of

05:56:23  6  closing arguments, and I hear about it for the first time.

05:56:25  7       Mr. Dacus, what's Defendant's view on how you all

05:56:28  8  should share and communicate any disputes regarding

05:56:32  9  demonstratives and yet not provide each other with an undue

05:56:38  10  amount of time to prepare a counter?

05:56:41  11       MR. DACUS:  I'll start with a confession,

05:56:43  12  Your Honor.  I'm -- I'm really not up to speed on this, and

05:56:46  13  I wasn't aware of whether there was or was not or when that

05:56:51  14  deadline would --

05:56:52  15       THE COURT:  All right.  Well --

05:56:52  16       MR. DACUS:  -- be.  So as I understood what

05:56:55  17  Ms. Smith said, the proposal was for 7:00 a.m. in the

05:56:58  18  morning to disclose.

05:56:59  19       MS. SMITH:  And -- and I -- Your Honor, I --

05:57:01  20  Mr. Dacus doesn't -- isn't aware because we don't have an

05:57:07  21  agreement on an exchange at all.  And so I was just

05:57:09  22  proposing 7:00 in advance of the 7:30 meeting in the case

05:57:13  23  that we have objections.  So Mr. Dacus was kind of ambushed

05:57:16  24  by me right now on the 7:00 o'clock proposal.

05:57:19  25       THE COURT:  All right.  Then let me cut through

05:57:21  1    the gordian knot for everybody.

05:57:24  2           The parties will exchange their proposed

05:57:27  3    demonstratives to be used during closing arguments by

05:57:30  4    6:00 a.m. tomorrow morning.

05:57:32  5           MS. SMITH:  Thank you, Your Honor.

05:57:33  6           THE COURT:  You'll meet and confer over that

05:57:33  7    intervening hour, and if there are disputes that cannot

05:57:36  8    otherwise be resolved between the parties, then at 7:00

05:57:38  9    o'clock, you'll deliver a three-ring binder to chambers

05:57:42  10   outlining your respective disputes and including a

05:57:46  11   representative copy of the demonstrative or demonstratives

05:57:49  12   in issue.

05:57:50  13          MR. DACUS:  Yes, Your Honor.

05:57:53  14          MS. SMITH:  Thank you, Your Honor.

05:57:53  15          MR. DACUS:  Thank you.

05:57:53  16          THE COURT:  All right.  Are there any other issues

05:57:55  17   that need to be addressed or questions to be raised before

05:57:58  18   we recess for the evening?

05:58:00  19          MS. SMITH:  Not for Plaintiff, Your Honor.

05:58:02  20          MR. DACUS:  Not from Defendant.

05:58:03  21          THE COURT:  All right.  Counsel, that completes

05:58:05  22   everything the Court has on its agenda for today.  Thank

05:58:08  23   you for your hard work this afternoon.

05:58:09  24          We stand in recess until tomorrow morning.

05:58:12  25          COURT SECURITY OFFICER:  All rise.

05:58:13    1          (Recess.)

         2

         3                    CERTIFICATION

         4

         5          I HEREBY CERTIFY that the foregoing is a true and

         6    correct transcript from the stenographic notes of the

         7    proceedings in the above-entitled matter to the best of my

         8    ability.

         9

        10

        11    /S/ Shelly Holmes _____          9/16/2020
              SHELLY HOLMES, CSR, TCRR             Date
        12    OFFICIAL REPORTER
              State of Texas No.: 7804
        13    Expiration Date: 12/31/2020

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25