███████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GREE, INC., | § | |
| | § | |
| Plaintiff, | § | Case No. 2:19-cv-00070-JRG-RSP |
| | § | Case No. 2:19-cv-00071-JRG-RSP |
| v. | § | |
| | § | |
| SUPERCELL OY, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |
| | § | |

## PLAINTIFF GREE, INC.'S OPPOSED MOTION FOR ENHANCEMENT OF DAMAGES AND TO FIND THE CASE EXCEPTIONAL AND AWARD FEES

███████████████████████████

█████████████

████████████████████████

**Table of Contents**

**Page**

I.    INTRODUCTION ....................................................................................1

II.   SUPERCELL'S WANTON, WILLFUL, AND FLAGRANT
INFRINGEMENT....................................................................................3

     A.    The Court Should Exercise Its Discretion to Enhance
Damages....................................................................................3

     B.    The Read v. Portec Factors Demonstrate Enhancement is
Warranted....................................................................................3

         1.    Supercell Undertook No Investigation and Lacked
Any Good Faith Belief its Actions Were Justified .................4

         2.    Supercell's Litigation Behavior Favors Enhanced
Damages....................................................................................6

     C.    Other Read v. Portec Factors Demonstrate that a
Substantial Enhancement is Warranted ........................................11

         1.    Factor 4: Supercell's Size and Financial Condition............11

         2.    Factor 5: Closeness of the Case ........................................11

         3.    Other Read Factors Support Enhanced Damages .................12

III.   THIS IS AN "EXCEPTIONAL" CASE WARRANTING
ATTORNEYS' FEES ....................................................................................12

     A.    The Court Should Deem This Case "Exceptional" Under 35
U.S ....................................................................................12

     B.    GREE's "Fair Estimate" Of Attorneys' Fees To Be
Awarded....................................................................................14

IV.   CONCLUSION....................................................................................15

████████████████

**Table of Authorities**

**Page**

**Cases**

*Barry v. Medtronic, Inc.,*
  250 F. Supp. 3d 107 (E.D. Tex. 2017) ..................................................................... 5

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................ 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-03999-BLF, 2016 WL 3880774 (N.D. Cal. July 18, 2016) ..................... 3

*Golight, Inc. v. Wal–Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) ............................................................................. 13

*Halo Elecs., Inc. v. Pulse Elecs. Inc.*,
  136 S. Ct. 1923 (2016) ............................................................................................. 3

*i4i Ltd. P'Ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ............................................................................... 12

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  No. 4:14-CV-371, 2016 WL 4480542 (E. D. Tex. Aug. 24, 2016) ..................... 3, 14

*Large Audience Display Sys. LLC. v. Tenman Prods. LLC,*
  660 Fed. Appx. 699 (Fed. Cir. Oct. 20, 2016) ........................................................ 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ................................................................................. 3, 12, 13

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992) .................................................................... 3, 4, 11, 12

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ............................................................................. 12

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  No. 08-cv-158-JRG, 2012 WL 4092449 (E.D. Tex. Sept. 17, 2012),
  *vacated and remanded on other grounds,* 769 F.3d 1073 (Fed. Cir. 2014) ........... 11

*Tinnus Enters., LLC v. Telebrands Corp.*,
  369 F. Supp. 3d 704 (E.D. Tex. 2019) ................................................................... 10

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
  No. 12-19935-PBS, 2016 WL 3976617  (D. Mass. July 22, 2016) ........................... 4

*VirnetX Inc. v. Apple Inc.*,
  324 F. Supp. 3d 836 (E.D. Tex. 2017),
  *aff'd sub nom. VirnetX Inc. v. Cisco Sys., Inc.,* 748 F. App'x 332 (Fed. Cir. 2019) ................. 4

*z4 Techs., Inc. v. Microsoft Corp.*,
  No. 06-CV-142, 2006 WL 2401099 (E.D. Tex. Aug. 18, 2006) ............................. 13

████████████████████████

**Statutes**

35 U.S.C. § 284 ................................................................................................... 1, 3, 11

35 U.S.C. § 285 ............................................................................................. 1, 12, 13, 14

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 5, 7

Fed. R. Civ. P. 54(d) ..................................................................................................... 15

Fed. R. Civ. P. 54(d)(2)(A)(b)(iii) ............................................................................... 14

Fed. R. Civ. P. 54(d)(2)(B)(iii) ...................................................................................... 1

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 54 and 59, Plaintiff GREE, Inc. ("GREE") hereby moves the Court to amend the Final Judgment (Dkt. No. 497) to enhance damages due to the jury's finding of willfulness and to find that the case is exceptional and award attorney's fees. Specifically, GREE moves, pursuant to 35 U.S.C. § 284, for an order increasing the actual damages assessed for defendant Supercell Oy's ("Supercell") willful infringement of GREE's patents and Supercell's litigation misconduct.  Based on the evidence in the record, GREE believes that enhancement of the jury award by three times is both appropriate and reasonable. In addition, GREE moves for a finding that this case is "exceptional" pursuant to 35 U.S.C. § 285 and an award of its reasonable attorneys' fees. Under FRCP 54(d)(2)(B)(iii), GREE provides a "fair estimate" that, should the Court declare this case exceptional, GREE will request approximately $▮▮▮▮▮▮ in fees associated with the prosecution of this matter, as detailed further below. These fees are reasonable for this type of litigation and the course of this case.

At trial, the jury found not only that Supercell infringed but also that its infringement was willful. Supercell has been on notice of GREE's U.S. patents asserted in this case and GREE's claims of infringement since at least September 2016, and yet Supercell did nothing in response. It neglected to perform any investigation or analysis of its games to determine if they included the infringing features and whether, if so, they should be changed to avoid infringement. No opinion of counsel was produced in this matter, nor did any Supercell witness testify about the basis for any belief of no infringement. In fact, its corporate witness addressed Supercell's decision not to make any changes to its products, and stated that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Sept. 14, 2020 Trial Trans. (Sealed) at 19:6-10. Thus, Supercell willfully ignored GREE's valid patent claims and its own infringement for years, through trial and beyond.

Beyond its willful infringement, Supercell engaged in litigation misconduct that unnecessarily increased the costs of litigation for GREE. This case began with a venue battle in which Supercell was simultaneously claiming no relevant witnesses existed in Texas while subpoenaing what it claimed was a "critical" witness in this very state. Dkt. No. 158 at 1. During discovery, despite already having made two separate trips to Japan to depose GREE witnesses, Supercell filed a motion to compel additional depositions of Japanese witnesses, requesting that they travel to Cambodia or other countries during the pandemic, to discuss GREE products that did not practice the asserted claims in the U.S., as well as seeking to extend the trial date by 90 days. *See* Dkt. No. 181 (denying Dkt. No. 156).[1] These motions were denied because Supercell could not articulate, beyond mere speculation, any reason to delay these cases for said depositions. By the end of discovery, GREE was also forced to move to strike evidence and expert opinions, including improperly disclosed evidence on non-infringing alternatives, paragraphs in reports addressing late-disclosed claim constructions, and *Daubert* motions related to improper opinions on an alleged "good faith belief" of non-infringement.

Supercell also protracted the pretrial stage, submitting an unreasonable exhibit list of more than 2,400 entries and then forcing GREE's counsel to engage endlessly in objecting to and asking Supercell to narrow said exhibits, the vast majority of which were dropped before trial. This unjustifiable tactic resulted in the need for *three* pretrial hearings to address exhibits, many of which never made an appearance in the record at trial. During trial, Supercell presented evidence that it had agreed not to raise as prior art and violated motions *in limine*.

Nothing less than an enhancement of damages will properly punish and deter Supercell's willful infringement. And Supercell's litigation conduct "stands out from others with respect to

---

[1] All Docket references are to the case entitled *GREE Inc. v. Supercell Oy,* Civil Action No. 19-cv-00070.

the substantive strength of a party's litigating positon (considering both the governing law and the facts of the case)…" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). An exceptional case finding is warranted, and for the same reasons Supercell should be ordered to pay GREE's reasonable attorneys' fees.

## II.     SUPERCELL'S WANTON, WILLFUL, AND FLAGRANT INFRINGEMENT

### A.     The Court Should Exercise Its Discretion to Enhance Damages.

Where actual damages are awarded for infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Supreme Court gives this Court discretion to determine whether, and how much, to increase damages:

> In applying this discretion, district courts are "to be guided by [the] sound legal principles" developed over nearly two centuries of application and interpretation of the Patent Act…Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement.

*Halo Elecs., Inc. v. Pulse Elecs. Inc.*, 136 S.Ct. 1923, 1935-36 (2016) (internal citations omitted). Surveying the history of rulings awarding increased damages, the Supreme Court summarized infringing behavior sufficient to justify exercise of this discretion as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* at 1932. Supercell's behavior in this matter has been at least willful, wanton, bad-faith, deliberate, and flagrant. For these reasons, damages should be enhanced.

### B.     The *Read v. Portec* Factors Demonstrate Enhancement is Warranted.

Willful infringement alone is sufficient to justify an award of increased damages. *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co*., No. 4:14-CV-371, 2016 WL 4480542, at *5 (E. D. Tex. Aug. 24, 2016). This district and others have also found that the factors listed in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), continue to be "helpful to the Court's exercise of its discretion" under *Halo*. *See VirnetX Inc. v. Apple Inc.,* 324

████████████████████████████████████

F. Supp. 3d 836, 864 (E.D. Tex. 2017), *aff'd sub nom. VirnetX Inc. v. Cisco Sys., Inc.,* 748 F.

App'x 332 (Fed. Cir. 2019); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2016

WL 3880774, at *16 (N.D. Cal. July 18, 2016) and *Trustees of Boston Univ. v. Everlight Elecs.*

*Co.*, No. 12-19935-PBS, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016). In *Read*, the Federal

Circuit identified three non-exclusive factors that tend to show that damages should be increased:

> (1) whether the infringer deliberately copied the ideas or design of another;
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and
> (3) the infringer's behavior as a party to the litigation.

970 F.2d at 827. Other factors that may be considered, particularly as to the award amount:

> (4) Defendant's size and financial condition; (5) Closeness of the case; (6) Duration of defendant's misconduct; (7) Remedial action by the defendant, if any; (8) Defendant's motivation for harm; and (9) Whether defendant attempted to conceal its misconduct.

*Id*. Applying these factors, Supercell's infringing conduct was wanton, willful, deliberate,

flagrant, and in bad faith.

### 1.   Supercell Undertook No Investigation and Lacked Any Good Faith Belief its Actions Were Justified.

Despite clear, undisputed evidence that Supercell was aware of GREE's asserted patent

families and related Japanese patents at least as early of September 2016, ████████████

████████████████████████ Supercell made no effort to address its infringement.

Specifically, GREE provided Supercell with a notice letter, including many Japanese related

patents and the U.S. application of one of the asserted patents, in September 2016, which

Supercell acknowledged that it received. PTX-104, PTX-105 at 21. In its interrogatory

responses, ████████████████████████████████████

██████ Declaration of Kasey Koballa ("Koballa Decl."), ¶ 1, Ex. A at 37 (Supercell's Fourth

Supplemental Response to GREE's 1st and 2nd Set of Interrogatories). But despite this

████████████████████████████████

awareness between September 2016 ███████████, Supercell did *nothing*. Trial Tr. 686:14-20. And not only did Supercell do nothing, it was entirely dismissive of GREE's claims. In fact, the only reason Supercell provided for its lack of effort to modify its games to address GREE's patented features was ████████████████████████████████ ██████████████████████. Trial Tr. (Sealed Vol. 2) 18:19-19:10. This deliberate indifference – its belief that GREE's complaints were ██████ – was characteristic of its lack of response to GREE's notice letter and claims of infringement.

Specifically, Supercell did not look at the patents or the claims made by GREE in the notice letter or at any point thereafter – in fact, Supercell's corporate representative (Jeff Ostler) testified in his Rule 30(b)(6) deposition that he had no knowledge of what Supercell did in response to the September 2016 letter. *See* Trial Tr. 684:12-686:20. ███████████████ ████████████████████████████ *See* Trial Tr. 687:21-688:7. Furthermore, Supercell was unable to identify at trial any attempt to analyze any of Supercell's games in connection with the claims of infringement. *See* Trial Tr. 684:12-686:20. The reason is ████████████████████████. Trial Tr. (Sealed Vol. 2) 18:19-19:10

While Supercell claimed that it formed a "good-faith belief" that there was no infringement, it presented no witness who either said that he or she held this belief, much less articulated the basis for this alleged belief. To the contrary, this purported belief was simply a construct of its litigation counsel, and not a belief formed *before* the initiation of the litigation. As made clear in *Halo*, culpability is judged at the time of the infringing conduct. *Halo*, 136 S.Ct. at 1932; *see also Barry v. Medtronic, Inc.,* 250 F. Supp. 3d 107, 115 (E.D. Tex. 2017) (finding Factor 2 of the *Read* factors is met because defendant's "good-faith belief" was formed during litigation and not prior to the time of the suit). Here, there is no dispute that the infringing

███████████████████████████████████████████

conduct began before the start of the lawsuit and that Supercell acted with complete disregard to

GREE's patents and its claims of infringement.

Despite Supercell's clear knowledge of GREE's U.S. patents, including the asserted

patents, and GREE's claims of infringement, Supercell did not take a single step to avoid

infringement at any point and to this day continues to infringe GREE's patents. In fact, at trial

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████. *See* Trial Tr.

837:25-838:4; 921:24-922:13; Trial Tr. (Sealed Vol. 2) 20:8-10.  As demonstrated by the jury's

finding that the infringement was willful, Supercell continued its infringing conduct with no

attempt to establish a good faith belief to the contrary.

### 2.      Supercell's Litigation Behavior Favors Enhanced Damages.

#### a).      *Supercell's Unreasonable Conduct During Discovery.*

Supercell's litigation conduct unnecessarily increased and prolonged the prosecution of

this matter. Such conduct began with a doomed venue battle, consisting of numerous motions

and briefing across this Court, in a second-filed declaratory judgment action Supercell filed in

the Northern District of California, and in the Federal Circuit Court of Appeals, where Supercell

asked for mandamus relief against this Court's order denying its venue challenge. In the

Northern District of California, Supercell sought a TRO against GREE's prosecution of these

actions before this Court, and that Court correctly ruled "principles of comity among federal

courts and judicial efficiency weigh heavily in favor of resolving all of the parties' disputes in

Texas" (*Supercell OY v. GREE, Inc.*, No. 3:19-CV-01106, Dkt. 32 (N.D. Cal. May 31, 2019).[2]

---

[2] That court also denied Supercell's request for a temporary restraining order to enjoin GREE from proceeding in Texas, stating that Supercell "is perfectly capable of raising all of its settlement agreement argument in [this Court]."  Koballa Decl., ¶ 7, Ex. G.  Later, in the hearing on GREE's motion to dismiss the California action, Judge Donato stated "I am not inclined to exercise my discretion while [this Court] is looking at the same issues in Texas…[t]hat is just a mistake from any perspective, judicial efficiency, party resources, civility between the sister

Likewise, this Court similarly ruled in favor of GREE, rejecting all of Supercell's strained

contract-based and other arguments. Dkt. No. 80.

Rather than accept that ruling, Supercell filed a writ of mandamus with the U.S. Court

of Appeals for the Federal Circuit. During the briefing of the writ, Supercell explicitly stated

that "the fact remains that *there are no witnesses in Texas*." Koballa Decl., ¶ 2, Ex. B at 15

(Reply to Supercell's Petition for Writ of Mandamus). Yet, just three days after its submission

to the Federal Circuit, Supercell served subpoenas for documents and testimony on Andrew

Sheppard, a witness in Texas. In response, GREE filed a Notice of Supplemental Authority

with the Federal Circuit pointing out both the disingenuous position and that Supercell knew of

the subpoena to Mr. Sheppard (served on the witness in Austin, Texas) prior to filing a

corrected response brief that (a) maintained the statement, and (b) failed to inform the court of

the subpoena. Koballa Decl., ¶ 3, Ex. C at 1. Moreover, Supercell not only deposed Mr.

Sheppard, but subpoenaed him as a witness at trial, forcing him to travel from Austin to

Marshall to testify under the subpoena. Koballa Decl. ¶ 6, Ex. F.

During discovery, Supercell took two separate trips to Japan to take several Rule 30(b)(6)

depositions of GREE and of inventor employees prior to the onset of the pandemic.  Dkt. No.

181 at 2. After the close of discovery, Supercell claimed, without justification, that the

depositions were insufficient and moved to compel additional depositions (while also asking for

a 90-day delay of trial).[3] Dkt. No. 156. In that same motion, Supercell claimed that it needed

more information and access to source code for certain GREE games, despite the clear and

---

courts…[y]ou name it, it comes out on the wrong side."  Koballa Decl., ¶ 8, Ex. H.
[3] Supercell also sought repeated delays of this proceeding, in a likely attempt to allow time for the Patent Trial and
Appeal Board ("PTAB") to hear its petitions; in one of its IPR proceedings, Supercell argued to the PTAB that
"[p]rudence counsels proceeding with the efficient IPR process rather than **relying on a jury trial in the
unpredictable Texas Litigation**."  Dkt. No. 160 at 1.

unrebutted evidence that (a) Supercell already had obtained extensive testimony about the games in question, even though they did not practice the relevant asserted claims in the United States, and (b) Supercell already had remote access to the requested code during discovery. Dkt. No. 181 at 4-6. As to the former, the Court already found Supercell was engaging in mere speculation; as to the latter, the Court found that not only did Supercell have access to the GREE code, which was of minimal value to the case, but that Supercell failed to meet and confer as required. *Id.* at 5. And the request for more depositions was based on "entirely speculative value." *Id.* The denial of that motion was appropriate and the conduct of Supercell demonstrated therein further supports enhanced damages.

Supercell also failed to properly disclose alleged non-infringing alternatives in discovery, forcing GREE to file a motion to strike. *See* Dkt. No. 201. The Court found that Supercell's behavior with respect to these late-disclosed non-infringing alternatives was "not justified nor harmless." Dkt. No. 354 at 4. GREE further was required to (a) move to strike testimony of Supercell's experts regarding improper claim constructions that conflicted with the Court's constructions and were untimely (Dkt. No. 365, granting-in-part GREE's motion), (b) move to exclude, under the *Daubert* standard, portions of Supercell's expert testimony regarding certain improperly and untimely disclosed opinions on Supercell's alleged "good faith belief" (Dkt. No. 357, granting-in-part GREE's motion), and (c) move to strike portions of Supercell's expert opinion related to the alleged "Sniper" reference which were untimely offered in a declaration after the close of expert discovery and contradicted his prior testimony (Dkt No. 253, withdrawn as moot). Such discovery conduct should not be countenanced.

### b).    *Supercell's Unreasonable Litigation Conduct during Pretrial.*

Supercell's egregious conduct extended to the pretrial phase. Rather than reasonably anticipate and prepare for the Court's well-understood pretrial procedures and expected trial

length, Supercell prepared and served an exhibit list that exceeded 2,400 items. Koballa Decl., ¶ 4, Ex. D. This list included materials such as docket control orders, claim construction briefs, expert reports in their entirety, hundreds of entries of prior art that were not cited in expert reports or irrelevant to the claims and defenses, notices of depositions, requests for email productions, and copies of motions to dismiss. *See id.* Only a mere fraction of those exhibits would ever be used at trial, but even after GREE's counsel pointed out Supercell's failure to in good faith provide a reasonable exhibit list, Supercell still presented an amended exhibit list of almost 1,300 exhibits that GREE's counsel was required to review and identify possible objections to each exhibit. Koballa Decl., ¶ 5, Ex. E. The process of doing so and meeting and conferring with Supercell's counsel ultimately resulted in parties gathering not just once, but *thrice*, for pretrial hearings to pare down the exhibit list.

And despite the well-understood position of the Court on the scheduling of the trial and the appearance of witnesses there, Supercell nevertheless refused to make any effort to bring five witnesses in-person to trial, and sought a last-minute continuation of the trial date due to the fact that these witnesses would not come to Texas. *See* Dkt. No. 453 at 1. This motion was filed just 36 hours before jury selection was scheduled to begin and *after* the parties and their counsel had gathered in Texas for trial. *See id.* The Court summarily denied the final motion without requiring a response from GREE. Dkt. No. 451. Indeed, despite this Court's invitation for Supercell to bring its witnesses to trial by having them quarantine as litigants had done in other cases, Supercell declined to bring to trial a single witness from Finland, or two of its experts. Dkt. 453, at 1-2. This forced GREE's counsel to take trial depositions of Supercell's witnesses during the same week that trial began, which prejudiced GREE. *Id.* at 3. This type of behavior weighs in favor of enhancement of damages as it creates "unnecessary and wasteful work for the

parties and the Court." *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 722 (E.D. Tex. 2019).

### *c).   Supercell's Unreasonable Litigation Tactics at Trial.*

At trial, Supercell's tactics continued. For example, Supercell agreed during the pretrial narrowing process that Supercell's "Angry Birds" evidence would only be used as background material and would not (and indeed could not) be presented as allegedly invalidating prior art. When counsel for Supercell introduced this same evidence at trial, counsel for GREE objected on the grounds that the evidence was not permitted as prior art, to which counsel for Supercell confirmed that it was not seeking to use the evidence as prior art, but only as it related to a "non-infringing alternative." *See* Trial Tr. 463:21-465:3. And yet, the first (and only) substantive question from counsel to GREE's expert, Dr. Akl, regarding the Angry Birds video shown to the jury was to ask whether Angry Birds was "well-known" and "predated the '873 patent." Trial Tr. 464:11-13.  Doing so resulted in an admonishment from the Court. Trial Tr. 464:14-465:3.

Finally, Supercell agreed at pretrial that neither party would "offer attorney argument, testimony, or other evidence that either party copied, cloned, stole, or imitated anything, including game development and design ideas, game features, business models or monetization strategies, from the opposing party or from third parties." Dkt. No. 402. Despite this agreement, Supercell nevertheless presented irrelevant testimony to the jury alleging that GREE copied elements of Supercell's games, which required numerous sustained objections from GREE. Trial Tr. 552:14-25; 553:24-556:13; 557:20-562:8; *see also* Trial Tr. 677:22-678:11.

Enhancement of damages is warranted based on this clear record of litigation misconduct and Supercell's complete failure to investigate and avoid infringement in this matter.  Moreover, the other *Read* factors favor enhancement as well.

### C. Other *Read v. Portec* Factors Demonstrate that a Substantial Enhancement is Warranted.

#### 1. Factor 4: Supercell's Size and Financial Condition.

Supercell's size and financial condition support an award of three times the actual damages. Supercell generated approximately $███████████ in U.S. revenue in 2019, realizing operating profits of approximately $████████████████. *See* PTX-100. Since 2016, Supercell has generated approximately $████████████ in U.S. revenue ($████ in 2016, $█████████ in 2017, $█████████ in 2018). *Id.* And Supercell is not the small company that it professes to be, with only 320 employees. In 2016, Tencent Holdings Limited, a foreign conglomerate that announced revenues of over $56 billion in 2019 alone, and more than 60,000 employees, gained ownership of Supercell through an investment consortium. Trial Tr. 843:3-5. Then, in 2019, it increased its shares, taking the majority of Supercell shares (and its seats on its Board of Directors), as Supercell's corporate representative was forced to admit on cross-examination. *Id.* In light of Supercell's size and financial condition, only a significant increase will serve to deter it under 35 U.S.C. § 284.

#### 2. Factor 5: Closeness of the Case.

This case was not close. The jury found that all of the asserted claims of the four patents where invalidity was at issue were not invalid, that Supercell had infringed at least one of the asserted patents, and that its infringement was willful, and awarded GREE $8,500,000.00 in damages. *See SSL Servs., LLC v. Citrix Sys., Inc.,* No. 08-cv-158-JRG, 2012 WL 4092449, at *5 (E.D. Tex. Sept. 17, 2012), *vacated and remanded on other grounds,* 769 F.3d 1073 (Fed. Cir. 2014) (finding this factor favored enhancement where the jury found willful infringement, that the patent was not invalid and awarded a $10 million lump-sum award). These facts demonstrate that the case was not close and enhancement of damages is warranted.

### 3.    Other *Read* Factors Support Enhanced Damages.

As discussed above, Supercell's misconduct began with its failure to respect GREE's

U.S. patent rights when it received notice of the patents in September 2016. Rather than engage

in good-faith negotiations to obtain the needed license for those patents in the U.S., or to cease

its infringing conduct, Supercell chose to play hard ball in litigation. Supercell's game-playing in

discovery and before trial unnecessarily prolonged this litigation. And yet even now, Supercell

has taken *zero* remedial actions as to its infringing games in the United States, but continues to

infringe in both this case and the later cases GREE has filed in this Court.

The remaining *Read* factors are, at least, neutral but regardless, the foregoing factors are

more than sufficient to establish that an award of enhanced damages is appropriate here. GREE

respectfully requests that this Court enhance damages by trebling the jury's award.

## III.   THIS IS AN "EXCEPTIONAL" CASE WARRANTING ATTORNEYS' FEES

### A.    The Court Should Deem This Case "Exceptional" Under 35 U.S.C. § 285

Section 285 of the Patent Act allows a court to award attorneys' fees to the prevailing

party in "exceptional cases." 35 U.S.C. § 285. For a case to be exceptional, it should "stand[] out

from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case

was litigated." *Octane Fitness*, 134 S.Ct. at 1756. "District courts may determine whether a case

is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the

circumstances."  *Id.*

The Federal Circuit has held that litigation misconduct "[t]ypically…refers to bringing

vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that

unnecessarily prolong litigation." *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed.

Cir. 2010); *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015)

("[U]nder *Octane Fitness*, the district court must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination"). Where willful infringement is proven, a case may be deemed "exceptional" under § 285. *See Golight, Inc. v. Wal–Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004); *z4 Techs., Inc. v. Microsoft Corp.*, No. 06-CV-142, 2006 WL 2401099, at *22 (E.D. Tex. Aug. 18, 2006) (J. Davis) ("[W]illful infringement is a factor…in determining if a case is exceptional.").

The jury found Supercell's infringement willful, and the Court entered final judgment in GREE's favor to that effect as to all patents and all asserted claims and further determined that GREE was the "prevailing party." Dkt. No. 497 at 2. A finding of willful infringement is a factor in favor of deeming the case exceptional under § 285. *See Golight*, 355 F.3d at 1340. As discussed above, GREE's case on willful infringement went unrebutted with Supercell failing to offer into evidence an opinion of counsel or any other evidence to show that Supercell took steps to avoid infringement upon notice of GREE's patents. Supercell's willful infringement continues to this day.

Also as discussed above, Supercell's litigation conduct throughout discovery, pretrial, and trial demonstrate that this case "stand[s] out from others with respect to…unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.Ct. at 1756. Avoiding needless repetition from what was presented above, Supercell's unreasonable conduct including filing a meritless venue dispute, filing an unwarranted discovery motion for depositions and source code that was dismissed by the Court, unjustified late-disclosure of non-infringing alternative evidence and other matters, and numerous motions to delay this case that had no basis in law or fact. In further consideration of the pretrial and trial behavior described above, Supercell's litigation conduct sets this case apart.

Therefore, the discovery and pretrial conduct, in combination with the finding of willful infringement, establishes that this case should be deemed "exceptional" under § 285, and further that an award of attorneys' fees should be granted.

**B.     GREE's "Fair Estimate" Of Attorneys' Fees To Be Awarded**

Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), GREE provides the Court with a "fair estimate" of fees that should be awarded for time incurred by counsel in the -070 matter since preparation for the filing of the Complaint on February 28, 2019. Should this Court deem the case exceptional, GREE will provide more detailed calculations to support this estimate.

Typically, attorney's fee awards are calculated using the lodestar method. *See Large Audience Display Sys. LLC. v. Tenman Prods. LLC,* 660 Fed. Appx. 699, 972 (Fed. Cir. Oct. 20, 2016). Under the lodestar method, the court calculates the attorney's fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 11-12 (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1984)). A reasonable hourly rate should reflect the prevailing market rate. *Id.* In addition, the court must examine the attorneys' comparable skill, experience, and reputation. *Id.*

This case involved complex patent issues and required significant party discovery. Depositions were taken of witnesses around the world, including Europe and Japan. As such, rates paid to national firms for specialized expertise in significant patent cases should be used to determine whether the rates are reasonable.

The hours and relevant discounted billing rates for GREE's attorneys (all from the firm Kilpatrick Townsend & Stockton LLP ("KTS")) who prosecuted the -070 case are attached hereto as Declaration of Taylor Ludlam ("Ludlam Decl.") at ¶ 1, Ex. I. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.,* No. 4:14-CV-00371, 2018 WL 1602460, at *1 (E.D. Tex. Apr. 3, 2018) (finding that documentation of hours incurred and billing rates for all

attorneys and legal paralegals is sufficient to show "fair estimate" under Fed. R. 54(d)). Those hours were reasonable and necessarily incurred in this matter and the conservative and "fair estimate" of KTS fees would be approximately $██████. *See* Ludlam Decl. at ¶ 2, Ex. I.

Estimated fees of $████████ for a case of this magnitude and complexity are likewise reasonable and expected. According to the 2019 AIPLA Economic Survey, fees and costs for patent cases in Texas where between $10 and $25 million dollars were at issue average $2.857 million, and in 25% of cases exceed $4 million. *See* Ludlam Decl., ¶ 3, Ex. J (2019 AIPLA Economic Survey, at I-144).

A review of the docket and critical pleadings and orders reveals that this was a bitterly litigated matter, and was well-litigated on GREE's part. These fees include significant time spent attempting to get discovery from Supercell, including addressing the conduct discussed above. GREE's fees were reasonable for the kind of patent litigation typical in this Court.

In sum, GREE was forced to expend a significant sum to vindicate its patent rights, in the face of unwarranted litigation conduct by Supercell. This is an exceptional case, and an order that Supercell pay GREE's attorneys' fees is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, GREE respectfully requests that the Court exercise its discretion and award enhanced damages of up to three times, as well as find this case exceptional and further award fees incurred by GREE, in an amount to be proven by GREE, but not more than $████████.

DATED:  November 25, 2020          Respectfully submitted,

GILLAM & SMITH, LLP


By:  */s/Steven D. Moore*
MELISSA R. SMITH
(Texas State Bar No. 24001351)
HARRY L. GILLAM, JR.
(Texas State Bar No. 07921800)
303 South Washington Avenue
Marshall, Texas  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257
Email:  melissa@gillamsmithlaw.com
Email:  gil@gillamsmithlaw.com

Of Counsel:                        KILPATRICK TOWNSEND & STOCKTON LLP
STEVEN D. MOORE (CA Bar No. 290875)
TAYLOR J. PFINGST (CA Bar No. 316516)
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:   (415) 576-0300
Email:  smoore@kilpatricktownsend.com
Email:  tpfingst@kilpatricktownsend.com

NORRIS P. BOOTHE (State Bar No. 307702)
1080 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 326-2400
Facsimile:   (650) 326-2422
Email:  nboothe@kilpatricktownsend.com

JOHN C. ALEMANNI (NC Bar No. 22977)
TAYLOR HIGGINS LUDLAM (NC Bar No. 42377)
KASEY E. KOBALLA (NC Bar No. 53766)
4208 Six Forks Road
Raleigh, NC  27609
Telephone:  (919) 420-1700
Facsimile:   (919) 420-1800
Email:  jalemanni@kilpatricktownsend.com
Email:  tludlam@kilpatricktownsend.com
Email:  kkoballa@kilpatricktownsend.com

MICHAEL T. MORLOCK (GA Bar No. 647460)
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: mmorlock@kilpatricktownsend.com

ALTON L. ABSHER III (NC Bar No. 36579)
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
Email: aabsher@kilpatricktownsend.com

Attorneys for PLAINTIFF
GREE, Inc.

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to the local rules of the Eastern District of Texas, Taylor H. Ludlam, could for

Plaintiff GREE, Inc., conferred with Defendant's counsel on November 25, 2020 regarding

**MOTION FOR ENHANCEMENT OF DAMAGES AND TO FIND THE CASE**

**EXCEPTIONAL AND AWARD FEES**. Plaintiff's counsel indicated that Plaintiff opposes the

Motion.

<u>/s/ Taylor H. Ludlam</u>
Taylor H. Ludlam
KILPATRICK TOWNSEND
& STOCKTON LLP
4208 Six Forks Road
Raleigh, NC  27609
tludlam@kilpatricktownsend.com

*Attorney for Plaintiff GREE, Inc.*



### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on November 25, 2020.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail.

*/s/Steven D. Moore*
Steven D. Moore